**OLNEY v. UNITED STATES.**

No. 50001.

United States Court of Claims.

July 15, 1952.

Amy Ruth Mahin, Washington, D. C., Covington & Burling, Charles A. Horsky and William L. Reynolds, Washington, D. C., on the briefs, for plaintiff.

T. S. L. Perlman, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., Ernest C. Baynard, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

The plaintiff, a retired referee in bankruptcy, sues for an increased retirement annuity which he claims under the provisions of the act of June 28, 1946, 60 Stat. 328, 11 U.S.C.A. § 68, sub. d(1). Prior to the enactment of this legislation referees in bankruptcy were on a fee basis. By the terms of the 1946 amendment it was stipulated that referees should receive as full compensation for their services salaries to be fixed by the Judicial Conference after advising with the district judges of the respective circuits and the Director, at rates not more than $10,000 per annum for full-time referees and not more than $5,000 per annum for part-time referees. Subsection d(1) of the same section provided that

*"All referees in bankruptcy and employees in the offices of such referees shall be deemed to be officers and employees in the judicial branch of the United States Government within the meaning of section 693 of Title 5."* [Italics ours.]

This act for the first time placed referees in bankruptcy under Civil Service and extended to them retirement privileges.

Plaintiff had served many years as a referee in bankruptcy.

Under this reorganized system plaintiff was appointed to a four-year term as referee to extend from July 1, 1947, to June 30, 1951. He retired January 1, 1949. He had served as Assistant United States Attorney from February 1, 1919, to December 31, 1921, and as referee in bankruptcy from February 14, 1922, through December 31, 1948. His highest pay or compensation during five consecutive years of service averaged $24,989.64 per annum.

The official in charge placed him on retirement at the rate of $8,340 per annum. This retirement was based on the highest fees which he had received for five consecutive years during his service as referee in bankruptcy.

By the act of October 5, 1949, Ch. 602, 63 Stat. 704, 5 U.S.C.A. § 698, the Civil Service Retirement Act was amended by adding at the end of section 4(e) a proviso to the effect that in case of officers and employees paid on a fee basis the maximum basic pay or compensation which may be used for the purposes of the act shall be $10,000 per annum. After the passage of this act the plaintiff's retirement benefits were reduced to an annuity of $2,938 which was the rate allowed by reason of the act of October 5, 1949, amending the Civil Service Retirement Act. The suit is for the difference in the two rates beginning May 1950.

In reporting the bill the Committee included the following in explaining the purposes of the measure:

"During hearings conducted by the committee with respect to this legislation, the committee's attention was directed to the case of a former referee in bankruptcy who received $20,000 annually, in fees, from June 5, 1924, to January 1, 1947, and during the period from January 1 to June 30, 1947, received $220,000. This referee was separated from his position before referees in bankruptcy were brought under the provisions of the Civil Service Retirement Act. However, he secured retirement coverage through service with the Federal Government for the month of December 1948, during which he contributed $7.43 to the retirement fund.

"In computing the annuity to which this referee is entitled under present law, the Civil Service Commission estimates that his 5-year salary basis will be $61,000, and assuming no deposit is made in the retirement fund to cover his service as a referee in bankruptcy, he will receive a life annuity of approximately $17,500 annually, or under a joint and survivorship election, $15,000 annually for himself and $8,750 annually for his widow upon his death.

"The committee does not believe the Civil Service Retirement Act is intended to produce such an incongruous result. Although under present law the claim of the former referee in bankruptcy is valid, the committee believes that the enactment of this legislation, which would reduce his annuity to $1,950, or $1,675 annually for himself and $975 annually for his widow if he elects a joint and survivorship annuity, is necessary in order to prevent the payment of an annuity entirely disproportionate to the $7.43 which he paid into the retirement fund.

"This legislation is retroactive to April 1, 1948, the effective date of the certain annuity provisions of Public Law 426, Eightieth Congress, which amended the Civil Service Retirement Act and will apply to a similar case which is also pending, and to a third case recently adjudicated."

In the instant case plaintiff's total contribution to the retirement fund was $800.-04, which had been deducted from his salary. Prior to the effective date of the 1946 act he of course had made no contributions because during that period he was not under the Civil Service Retirement Act and was therefore not subject to its provisions.

Plaintiff asserts that since he retired under the 1946 act and before the adoption of the October 1949 amendment, he had a binding contract with the Government for a life anuity of $8,340; that this was a vested right and that the act of October 5, 1949, in so far as it applied to plaintiff's case was invalid and violative of the Fifth Amendment.

The defendant denies that there were any contract rights and asserts that the Congress had the right to limit the disproportionately large benefit payments on the annuity of a retired employee and that such enactment does not violate the Fifth Amendment to the Constitution.

We do not think plaintiff is entitled to recover.

Prior to the 1946 act referees in bankruptcy were paid according to the terms of Title 11, Section 68 of the United States Code Annotated. These payments were not made by the United States Government, but

were paid out of the bankrupt's assets on a percentage of the monies disbursed in the ancillary proceedings to lien creditors and on monies transmitted on the fair value of the property turned over in kind by the court of ancillary jurisdiction to the court of primary jurisdiction. The same section provides that the judge by standing rule or otherwise may fix a lower rate of compensation so that no referee shall receive excessive compensation during his term of office. The section also provides that the judge may prescribe terms and conditions for the payment of the referee's compensation.

The act of 1946 which covered referees in bankruptcy into the Civil Service and gave them retirement privileges, placed a salary limit of $10,000 annually for full-time referees and $5,000 annually for part-time referees. The placing of this salary limit in the terms of the same act which gave the referees in bankruptcy retirement privileges may reasonably be construed as being the top limit of the basis for calculation of retirement pay. Construing the whole act together we think that was the manifest meaning of the act.

During the entire period of service of referees in bankruptcy prior to the 1946 act they were privileged to engage in the practice of the law in all matters outside the bankruptcy act.

The Congress had the choice of covering referees into Civil Service or leaving them out. A generous government has seen fit to include them, notwithstanding they were paid, not out of the Federal Treasury, but out of the bankrupt estates. All referees whose period of service follows the enactment of the 1946 act will be subject to the $10,000 limitation. It seems certain that Congress did not intend to afford a windfall to a few referees whose period of service antedated the passage of the law, and who made less contribution than the later referees who would thus be discriminated against. The treatment should be the same for all referees.

In the hearings on a previous bill (which was not enacted into law), H. R. 33, (1945) a letter from the Chief of the Retirement Division of the Civil Service Commission was placed in the record. We quote from that letter the following:

"With reference to allowance of credit for past service, referees in bankruptcy have heretofore been held not to be employees of the United States within the meaning of the Civil Service Retirement Act as amended, inasmuch as their appointments have been for a particular duty and they were paid therefor on a fee basis."

Thus it was well recognized that at that time referees were not Federal employees within the meaning of the Civil Service Retirement Act.

When the 1946 amendments were enacted the method of payment of referees was changed. By their terms the fees were to be paid into a referees' salary fund in the Treasury of the United States, and it was provided that the referees were to be paid salaries out of this fund. If the amount of the fund was insufficient, payment of any deficiency was to be made out of the general funds appropriated from the Treasury.

The status of referees was changed in other respects. Their terms were changed from two to six years. It was provided that full-time referees could be removed only on charges of incompetence, misconduct, or neglect of duty, on which they were given a right to be heard. Before that they were removable at the pleasure of the judge. There were other changes and restrictions.[1]

1. The committee report on the 1946 amendments contained the following: "Provision has been made * * * to utilize the services of retired referees * * * desirous of working and * * * called upon by a district judge. The retired referee does not, by this service, return to his salary status; he continues to receive *only* his retirement allowance." S.Rpt. 959, 79th Cong. 2d Sess. (1946) [Emphasis supplied.] This passage seems inconsistent with plaintiff's interpretation, under which some retired referees would receive greater compensation for work after retirement, or indeed for no work at all, than referees on active service.

This is not a case where regular employees of the Government are covered into Civil Service and continue the same type of service, without any specified change of status, and are given credit for past service rendered under the same conditions.

But by the terms of the 1946 act, referees became regular Federal employees for the first time. Their status was changed. Their past service had been on a different basis. There is not quite the same reason for using their past service as a basis for retirement, except on such conditions as Congress might name.

■■■ To allow a few of these referees to use as a basis for the calculation of their retirement annuities the large fees which they were permitted to collect from bankruptcy assets would give them retirement privileges all out of proportion to those of Federal employees generally. The result in some cases is indicated by the committee report. We think it more reasonable to construe the $10,000 limit as being part and parcel of the act which covered referees in bankruptcy into the Civil Service. It is true that one provision of the retirement act would allow employees the highest five-year average upon which to base their retirement pay, but statutes must be construed as a whole, and when the two provisions are read together the intention of the Congress to limit the base of retirement to $10,000 becomes the natural construction. When there are two possible constructions it is the general rule that the construction which will produce reasonable results should be adopted. Knowlton v. Moore, 178 U.S. 41, 77, 20 S.Ct. 747, 44 L.Ed. 969.

To reach any other conclusion, according to the report of the Congressional committee, would have given one referee, whose compensation averaged $61,000 for a five-year period, a lifetime retirement at the rate of $17,500 annually, and he would have received this retirement pay without having made any contribution to the retirement fund on his service as a referee.

We do not see how a court, any court, or any agency of the Government, could reasonably construe the act of the Congress in such a way as to produce such a result.

The outstanding fact in this case is the absurdity of the result for which plaintiff argues. No recitation of inflexible legal form can obscure that fact. It is not merely incidental or collateral but it is in a very real sense the case itself. Without that fact there would have been no amendment of the law, and there would have been no case in this court.

■ We think that the Civil Service Commission made a miscalculation in the first place in allowing the plaintiff retirement at the rate of $8,340 per annum. It should have been calculated from the beginning at the rate of $2,928 per annum, based on the salary, pay or compensation limit of $10,000 annually as stipulated in the 1946 act. We think that the provisions of the act of October 5, 1949, were unnecessary; that this should have been the construction of the language of the 1946 act regardless of whether the 1949 amendment had been enacted. However, the fact that Congress acted swiftly to correct the construction placed upon it by the officials in charge of its administration is persuasive as indicating the intention of the Congress in covering the referees in bankruptcy into the Civil Service retirement system.

This construction which we think is the correct one makes it unnecessary for us to reach the question of whether a Civil Service employee who actually retires pursuant to the terms of the retirement act has by such retirement achieved contractual status. It also makes it unnecessary to pass upon the question of whether the 1949 amendment was invalid.

HOWELL and LITTLETON, Judges, concur.

MADDEN, Judge (concurring in the result).

I think the court is right in dismissing the plaintiff's petition. The court's reason for doing so does not seem to me to be valid. It construes the Act of June 28, 1946, as never having given referees in bankruptcy the right to compute their retirement benefits upon the basis of the compensation which they had actually received, if that compensation had amounted to more than

ten thousand dollars per annum. I find nothing whatever in the statute which suggests such a construction. The fact that the statute set referees' salaries for the future at a $10,000 maximum seems to have no bearing, since the Civil Service Retirement Act, to which the 1946 Act refers for the ascertainment of retirement rights, bases retirement pay upon the average compensation received *at any time* for five consecutive years. If the salary of a Government employee had been $7,500 per annum for more than five years, and Congress then reduced the salary of his position to $5,000 per annum, and he served for five years more at the reduced salary and then retired, it could not, I think, be argued that Congress by implication had reduced his retirement allowance to the $5,000 basis. The court's opinion produces a fictional $10,000 salary which the plaintiff had never received over any five year period, and makes it the basis of a retirement allowance fixed, in unambiguous language, on the basis of compensation actually received.

In the hearings before the Special Committee on Bankruptcy and Reorganization, on H.R. 33 and H.R. 3338, 79th Congress, June 25–26, 1945, pages 38–39, appears a letter from the Chief of the Retirement Division of the Civil Service Commission stating that, if referees were put under the Civil Service Retirement Act it would be entirely feasible to compute their retirement allowances on the basis of fees received by them for their services in former years. The 1946 Act thus came from a Committee which had no idea that the retirement allowances of referees would be based upon a hypothetical salary of $10,000 and not upon the actual compensation received by them.

The Government, in its defense, has not made bold to advance the theory upon which the court has decided the case, and I think the Government's estimate of its validity was accurate.

Consideration of the validity of the Act of October 5, 1949, reducing the retirement benefits of the plaintiff and other referees who had received average annual compensation from fees of more than $10,000 a year for five consecutive years at some time before the 1946 Act put them on a salary basis, must, I think, be undertaken. The plaintiff says that the Act is unconstitutional as depriving the plaintiff of a vested contract right, equal in substance to a property right, and thus protected from impairment by the Fifth Amendment.

If the Government makes a contract, it cannot ordinarily destroy the other party's rights under the contract by mere legislation purporting to modify the contract. In the usual case, its sole escape is to expressly reassert its ancient prerogative of immunity from suit. Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434. The Government urges in the instant case that the plaintiff had no contract, but only the benefit of a law, which, like most laws, could be repealed or amended. I think this position is correct. I think the tendency to treat legislation fixing salaries or benefits as creating contracts, then treating the contracts as property protected by the Fifth Amendment, thus making the legislation unchangeable, is to be deplored.

If so much legislation is constitutional law, the constitutional coinage is depreciated. It seems to me that the most that can be said for the contract theory of salaries or retirement benefits is that there is a vague sort of equity in one who has left his opportunities in the outside world and taken Government employment at a statutory salary that the salary should not be reduced unfairly and without good reason. But this equity comes nowhere near being a constitutional right, tying the hands of the legislature to prevent it from doing what seems to it wise in future circumstances. I think that one who retires, or is forced by law to retire from Government service at a time when the law provides generous retirement benefits has no greater constitutional right to the continuation of those benefits than the one who accepts Government employment has to the continuation of the salary at which he entered the Government's employ.

The Supreme Court had substantially our question in Dodge v. Board of Education, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57. It held that the statutory teachers' retirement plan there in litigation created no contract rights, and that the state could reduce bene-

fits without being guilty of impairing the obligation of contracts. There is nothing in the Civil Service Retirement Act which suggests that the United States makes contracts with its retired civil servants which was not equally present in the Illinois statute involved in the Dodge case.

I am authorized to state that Judge WHITAKER concurs in the foregoing opinion concurring in the result.