By The Review PaNel : The United States Senate, by means of S. Res. 368 (92d Cong., 2d Sess., approved September 19, 1972), referred S. 1418 (92d Cong., 1st Sess.), a bill for the relief of William Phillips of Honolulu, Hawaii, to the Chief Commissioner of the United 'States Court of *926 Claims for proceedings in accordance with. 28 U.S.C. §§ 1492 and 2509. S. Res. 368 mandated the furnishing of a report to the Senate 'by the Chief Commissioner “giving such, findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand as a claim, legal or equitable, against the United States, or a gratuity, and the amount, if any, legally or equitably due from the United States to the claimant.”
S. 1418 authorized the Secretary of the Treasury to pay the claimant, William Phillips of Honolulu, Hawaii, the sum of $5,000 in full satisfaction of all his claims against the United States as compensation for loss of sight in one eye, disfigurement, and loss of earnings which resulted from injuries the claimant suffered on February 1, 1937, while employed by the United States Army Corps of Engineers.
Following proceedings considered appropriate by the attorneys representing the claimant and the United States, Trial Commissioner Harry E. Wood, pursuant to an assignment from the Chief Commissioner, filed his report on April 28,1975, containing an opinion, findings of fact, and a conclusion. In his report, Trial Commissioner Wood “concluded that plaintiff [the claimant William Phillips] does not have a legal or an equitable claim, and that any payment to him of compensation beyond that heretofore paid to him would amount to a gratuity.” Thereafter, the claimant, dissatisfied with the Trial Commissioner’s report, filed exceptions thereto and a brief in support of his objections to the opinion, findings of fact and conclusion of the Trial Commissioner with the Review Panel designated by the Chief-Commissioner. The United States filed a responding brief wherein it urged the Review Panel to adopt the Trial Commissioner’s report as its own. Both the claimant and the United States waived oral argument before the Review Panel.
Upon careful consideration of the Trial Commissioner’s report, claimant’s exceptions and brief manifesting his objections thereto, defendant’s brief in support of said report, and the complete record of the proceedings before the Trial Commissioner, since the Review Panel agrees with the opinion, findings of fact, and conclusion of the Trial Com *927 missioner, it herein adopts the same as the basis for the report to the Senate as requested by S. Res. 368.*
Accordingly, the Senate is informed that claimant William Phillips of Honolulu, Hawaii, does not have a legal or an equitable claim against the United States relative to injuries he suffered on February 1, 1937, while employed by the United States Army Corps of Engineers, and that any payment to him of compensation beyond that already paid him because of said injuries would amount to a gratuity.
The opinion, findings of fact and conclusion of Trial Commissioner Harry E. Wood are attached hereto and incorporated herein.
OPINION OF THE TRIAL COMMISSIONER **
Wood, Trial Commissioner:
By S. Res. 368, 92d Cong., 2d Sess., approved September 19,1972, the United States Senate referred S. 1418, 92d Cong., 1st Sess., a bill for the relief of William Phillips, of Honolulu, Hawaii, to the Chief Commissioner pursuant to 28 U.S.C. §§1492 and 2509 (1970). S. 1418 authorizes and directs the Secretary of the Treasury to pay to plaintiff the sum of $5,000 “in full satisfaction of all his claims against the United States for compensation for loss of sight in one eye, disfigurement, and loss of earnings which resulted from injuries suffered by the said William Phillips on February 1,1937, while employed by the United States Army Corps of Engineers.”
The facts out of which the claim herein arises are relatively simple, and essentially undisputed. On February 1, 1937, while an employee of the District Engineer, United States Army Corps of Engineers, and at work at Alaimanu Crater, Honolulu, Hawaii, as a carpenter, Mr. Phillips sustained personal injury while in the performance of his duty.
More specifically, while Mr. Phillips was in the process of building a wooden form for concrete to be poured, the end of a piece of wire used to tie steel reinforcing rods together struck his right eye. He was treated as an outpatient on *928 February 1,1937, and then hospitalized from February 2 to February 26, 1937, at Triplet General Hospital, Honolulu. When he was discharged from the said hospital February 26, 1937, he was blind in the right eye. Some 2 years later, the eye, which by then had shrunk, was surgically removed and replaced with an artificial one.
In essence, the act of September 7, 1916, 39 Stat. 742, 5 U.S.C. §§ 751 et seq. (1940), as in force in 1937 and for many years thereafter, limited the disability compensation due a government employee for partial disability resulting from a personal injury sustained while in the performance of his duty to “66% per centum of the difference between his monthly pay [at the time of the injury] and his monthly wage-earning capacity after the beginning of such partial disability.” Thus, unless an injury resulted in wage loss, no compensation could be paid. The 1916 act did provide, however, that defendant would furnish an injured employee the necessary medical, surgical and hospital service.
The 1916 act authorized neither a schedule award for an injury causing loss of an eye, nor compensation for disfigurement. Plaintiff’s medical expenses arising from both the February 1,1937 injury and the 1939 removal of his eye (and its replacement with an artificial one) were borne by defendant. Plaintiff was also paid all disability compensation due him under the provisions of the 1916 law as in force in and after 1937. Since, however, wage loss (measured against monthly pay at the time of injury) was a prerequisite to entitlement to disability compensation in and after 1937, payments to plaintiff ceased by 1943 or 1944. While plaintiff could not testify to the exact amount of compensation he was paid, the Department of the Army reported to the Senate in 1970 that, according to the Department of Labor, the total amount thereof was $881.80.
Plaintiff readily concedes that he has no legal claim to relief. And,' on analysis of just what plaintiff seeks in this reference, it is readily apparent that he does not have a “legal or equitable claim against the United States, in the sense of a claim enforceable in a court, under applicable legal standards.” Rumley v. United States, 169 Ct. Cl. 100, 103 (1965). *929 See also Palmer-Bee Co. v. United States, 142 Ct. Cl. 485, 488 (1958).
Indeed, plaintiff does not even suggest he was deprived of any benefits due him under the act of September 7, 1916, supra, as it stood in 1987 and for some years thereafter. The essence of the claim is, rather, that in 1949 Congress amended the 1916 act to confer greater benefits than had theretofore been provided, that the 1949 amendments were made retroactive to any case where the injury occurred on or after January 1,1940, and that he is “equitably” entitled to be paid sufficient additional compensation to make the payments to him for his injury equal that he would have received had his injury occurred after, rather than before, January 1, 1940.
In Burkhardt v. United States, 113 Ct. Cl. 658, 667, 84 F. Supp. 553, 559 (1949), the court expressed the “opinion that the term ‘equitable claim’ as used in 28 U.S.C., Sec. 2509, is not used in a strict technical sense meaning a claim involving consideration of principles of right and justice as administered by courts of equity, but the broader moral sense based upon general equitable considerations.” The very significance of the concept thus described is that it permits going beyond the rules of law, and applying “equity” in its broad sense. Rumley v. United States, supra, 169 Ct. Cl. at 106. See also Ghitescu v. United States, 201 Ct. Cl. 823, 827-28 (1973), and cases there cited; Town of Kure Beach v. United States, 168 Ct. Cl. 597 (1964); Georgia Kaolin Co. v. United States, 145 Ct. Cl. 39 (1959).
While the existence of an “unjustified act or omission resulting in the injury for which redress is sought” is, on occasion, validly deemed a precondition to “equitable” liability under Section 2509, it is, plainly and assuredly, not a universally necessary one. Ghitescu v. United States, supra; Rumley v. United States, supra; Town of Kure Beach v. United States, supra; cf. Burt v. United States, 199 Ct. Cl. 897 (1972). As the cited authorities establish, the concept embodied in Section 2509 is not so narrowly limited here. -
' Even viewed in the light of the broadest moral principles of right and justice, however, a claim by one afforded all benefits due him under legislation in force in 1937, when his loss of sight in the right eye occurred, to the benefits of sub *930 sequently enacted legislation specifically made retroactive only to injuries occurring on and after January 1, 1940, •cannot fairly be said to be an “equitable” one involving any obligation founded on considerations of good conscience or morality.
A statute which provides compensation for an injury to a federal employee is entitled to a liberal construction to effect its remedial purposes. Cf. United States v. Zacks, 375 U.S. 59, 68 (1963). Such a statute is, however, also a congressional declaration of what it considers its moral duty to one who has become disabled as a result of his federal employment. See Mackie v. United States, 172 Ct. Cl. 393, 396 (1965) ; Stone v. United States, 160 Ct. Cl. 128 (1963). The benefits accruing to plaintiff pursuant to the laws in effect at the time he was injured are the extent of the obligation Congress thought it owed to one so disabled in consequence of his federal civilian employment. Cf. Hayfield v. United States, 155 Ct. Cl. 589 (1961).
When, in 1949, Congress changed the law to provide that greater benefits should be paid for such an injury occurring after January 1, 1940, it could easily have made the change applicable to those injured prior to January 1,1940, as well. It specifically declined to do so, however. That question was one for determination by the Congress as a matter of policy. Mackie v. United States, supra; Stone v. United States, supra. It cannot be said that in making the decision it did, Congress created any equitable or moral rights in those persons, like plaintiff, outside the scope of the new statutory provisions as enacted. Cf. Abrams v. United States, 159 Ct. Cl. 388, 397-98, 311 F.2d 230, 234-35 (1963); Hayfield v. United States, supra; Olney v. United States, 123 Ct. Cl. 285, 105 F. Supp. 1005, cert denied, 344 U.S. 898 (1952).
To give plaintiff greater compensation for his injury than others similarly situated would be to give him “preferential treatment, which is abhorrent to our sense of justice.” Mackie v. United States, supra. Any decision by the Congress to do so would be a matter of legislative grace, not the satisfaction of any “equitable” obligation. Ibid; see also Stone v. United States, supra.
*931 In these circumstances, any conclusions respecting the defenses of limitations and laches, both asserted by defendant herein, are deemed unnecessary. It is, however, perhaps appropriate to note that since the claim rests entirely on an asserted moral obligation, the applicability of the doctrine of limitations is less than crystal clear. Too, it should perhaps be observed that the absence of prejudice to defendant from the timing of the claim renders the efficacy of the defense of laches questionable. Cf. McQuown v. United States, 199 Ct. Cl. 858 (1972). In view of the result here reached, however, both issues may be, and are, pretermibted.
In sum, it is concluded that plaintiff does not have a legal or an equitable claim, and that any payment to him of compensation beyond that heretofore paid to him would amount to a gratuity.

 Whereas the Review Panel adopts the trial commissioner’s separate findings of fact, they are not printed In this volume of the Court of Claims Reports, since such facts as are necessary are contained in his opinion.

The opinion, findings of fact, and conclusions are submlttted pursuant to the Rules of the Chief Commissioner.