In the Matter of JOHN P. HENNESSEY, Petitioner, against FRANK C. MOORE, as State Comptroller of the State of New York, et al., Respondents.

Third Department, January 7, 1948.

*Seth T. Cole* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General* and *John C. Crary, Jr., Assistant Attorney-General,* of counsel), for respondents.

RUSSELL, J.   This proceeding was instituted under article 78 of the Civil Practice Act to review a determination, dated September 27, 1945, made by respondent State Comptroller, of petitioner's retirement allowance after a hearing held upon petitioner's request pursuant to subdivision 5 of section 54 of the Civil Service Law.

The petitioner also appealed from a separate order of the Special Term, denying motions addressed to the composition

of the record of proceedings filed by the respondents. No argument is now directly addressed to this court upon procedural issues involved in this matter.

The facts show that petitioner retired from the State service as of February 16, 1943, pursuant to his application under section 68-a of the Civil Service Law. He selected option 3 under section 68 of the Civil Service Law, under which option a lesser retirement allowance would be paid to him for life and upon his death one half of such allowance would be paid to his beneficiary for life, should such beneficiary survive him. His wife was named his beneficiary.

The petitioner first applied for retirement on November 18, 1942, to become effective January 1, 1943, but remained in service by request until the appointment of his successor as a member of the State Tax Commission was made. He then filed a new application on February 17, 1943, because of the requirement that an application be on file for thirty days before becoming effective. The question arose as to when his retirement became effective and when payment should commence thereunder. This question was finally disposed of by recognizing the petitioner's original application and fixing the date of his retirement as of February 16, 1943.

In this controversy three issues arise: First — whether the mortality tables in use by the system since its inception in 1921 were adopted in accordance with and complied with the requirements of section 54 of the Civil Service Law. With respect to this issue it is the contention of the petitioner that the mortality table, namely, McClintock's Mortality Table, which was used by the Comptroller in computing petitioner's retirement allowance, was an illegal mortality table and in violation of section 54 of the Civil Service Law. Second — whether the petitioner was entitled to the crediting of interest at 4% up to the time of his retirement rather than 2% on the amount of additional contributions above his normal deductions made under the privilege granted by the statute, despite the amendment of subdivision 1 of section 58 by chapter 856 of the Laws of 1939, effective June 13th of that year, which reduced the rate of interest on such additional contributions and terminated the privilege of making them in the future. Petitioner claims that he is entitled to the same rate of interest and the same annuity on additional contributions as on normal contributions, and that failure to allow 4% interest on additional contributions was in violation of petitioner's contract. Third — whether petitioner

was entitled to the use of an interest rate of 4% instead of 2% in the application of the mortality tables for computation of that part of his annuity derived from such additional contributions, despite the amendment of subdivision 1 of section 58, by chapter 370 of the Laws of 1942. As to the third issue the Comptroller found in favor of petitioner upon redetermination. The Comptroller's redetermination was arrived at because of the fact that he had not authorized the use of any interest rate other than the regular rate of 4% under the 1942 amendment of subdivision 1 of section 58, in order to determine the annuity provided by additional contributions on the basis of the mortality tables.

The petitioner's contributions amounted to $37,428.46. It is his contention that the amount of annuity being paid by the use of McClintock's table is approximately $510 less than the amount of annuity payable, had the respondents complied with section 54 of the Civil Service Law.

The New York State Employees' Retirement System was created on May 11, 1920, under the Civil Service Law as added by chapter 741 of the Laws of 1920. Membership commenced not before January 1, 1921. It was found necessary to adopt an actuarial retirement system not only to prevent an unexpected expense upon the taxpayers, but also to have a solvent State retirement fund. The Legislature clothed the Comptroller with the power to adopt "such mortality, service and other tables as shall be deemed necessary" for the best operation of the system (Civil Service Law, § 54, subd. 2, par. [a]). For this purpose the statute provided for an appointment of an actuary to make an "investigation of the mortality, service and compensation experience of the employees of the various occupational groups as provided in section fifty-two, subdivision four " (Civil Service Law, § 54, subd. 2).

The actuary's investigation resulted in the use of the New York City pension system as being the most applicable to the State system's membership. The tables used in that system were necessarily based upon experience of New York City with similar classes of employees. The table adopted by the actuary was McClintock's. This table from experience related not only to service and compensation tables, but also to mortality tables. Its use apparently proved satisfactory, because the Legislature did not authorize the use of any particular table, but left the adoption of such table in the discretion of the Comptroller. No change was made in the use of McClintock's table after

compliance by the actuary with the Civil Service Law which reads in part as follows: "In the five-year period beginning with the year nineteen hundred and twenty-one and in every five-year period thereafter, he shall make an actuarial investigation into the mortality, service and compensation experience of the members and beneficiaries as defined by this article and shall make a valuation of the assets and liabilities of the various funds created by this article. Upon the basis of such investigation and valuation the comptroller shall adopt such tables and certify such rates as are required in paragraphs (a), (b) and (c) of this subdivision." (§ 54, subd. 2.)

The petitioner claims that this continued use of McClintock's tables was in violation of section 54 of the Civil Service Law and his contractual right with the State and, therefore, these tables do not allow to members of the system the retirement allowance to which they are entitled. He specifies several other mortality tables which have an annuity factor less than McClintock's tables. The higher the annuity factor, naturally, the less the allowance. The elements considered by the actuary in arriving at the annuity factor in these tables other than McClintock's tables do not appear. In the instant proceeding section 54 specifies the different elements that the actuary must consider for the purpose of determining the proper tables for adoption by the comptroller. It is difficult to understand where there was a failure upon the part of the Comptroller, through the actuary appointed, to comply with section 54. By Exhibits 9, 10, 11 and 12 in the record, it appears that the actuary reported as to the assets and liabilities, including an investigation of the mortality, service and compensation experience of members as of June 30, 1925, June 30, 1930, June 30, 1935 and June 30, 1940.

Because of the fact that the State system neither accumulated a surplus in the annuity fund, nor suffered a serious loss with respect to that fund, the use of the tables adopted by the Comptroller was continued. The statute clothed the Comptroller with discretion to adopt and use the table that in his opinion was providing the best result for the system and there being at this time no contractual right with the State, that discretion could not be taken away.

We shall now consider petitioner's claim of 4% interest on his additional deposits. It appears petitioner had made additional deposits of $2,562.66. Up until June 30, 1939, he was credited with interest at 4% amounting to $184.11. From that date until his retirement he was credited with 2% interest on

these additional deposits which amounted to $202.13. It is his contention that he should have been allowed 4% on his additional contributions from June 30, 1939 until his retirement.

Section 58, subdivision 1, of the Civil Service Law was amended by chapter 856 of the Laws of 1939, which read in part as follows: "* * * Any deductions heretofore made in addition to those hereinbefore provided shall be allowed interest at such rate as in the opinion of the comptroller is the prevailing rate of interest allowed on savings bank deposits. Any future deductions in addition to those hereinbefore provided shall be prohibited. * * *" From the date the amendment went into effect by the Laws of 1939, the rate of interest was fixed at 2% and the petitioner was credited on the additional deposits with $202.13. The petitioner contends that a reduction in the rate of interest is in effect the reduction in the amount of annuity payable to any member and that the State did not have the inherent power to alter the rate of interest because he had a contractual right protected by both the State and Federal statutes. At the time the amendment to section 58, subdivision 1, was made by chapter 856 of the Laws of 1939, there existed no contract with the State by a member of the system. It was simply a right granted by law to a person to become a member of the system. To grant a contractual or an irrevocable right at the time of this amendment it would have to appear that the statute by its explicit terms created an assumed burden of private vested rights on a contractual basis. (*Dodge* v. *Board of Education*, 302 U. S. 74.)

It was held in *Roddy* v. *Valentine* (268 N. Y. 228) that retirement rights under a police pension fund which included contributions by the members did not become vested until time of retirement and until such retirement time they were "subject to change or even to revocation at the will of the Legislature." However, the 1938 Constitutional Convention adopted an amendment, which was approved by the people in 1938, and did not go into effect until July 1, 1940. Said amendment (art. V, § 7) reads as follows: "After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired." It is, therefore, clear that at the time of the amendment of section 58 of the Civil Service Law by chapter 856 of the Laws of 1939, the petitioner had no contractual right with the State and the Legislature had the power to reduce the

rate of interest on additional deposits from 4% to 2%. Whatever vested rights he had were determined by the amendment of section 58, subdivision 1, of the Civil Service Law by chapter 856 of the Laws of 1939 and remained until his retirement.

A question also arises as to the exercise of the administrative authority of the Comptroller being in violation of article V, section 1, of the State Constitution. Article V, section 1, of the Constitution, as amended in 1925 with respect to the Comptroller, provided that the Legislature shall define the Comptroller's powers and duties " but shall assign to him no administrative duties, excepting such as may be incidental to the performance of these functions ". Said functions are " (1) To audit all vouchers before payment and all official accounts; (2) to audit the accrual and collection of all revenues and receipts; and (3) to prescribe such methods of accounting as are necessary for the performance of the foregoing duties."

When the State Employees' Retirement System was established in 1920, the Comptroller became the administrative head of the system. (Civil Service Law, § 54.) He had been administering and was administering the affairs of the system at the time article V, section 1, of the Constitution was amended in 1925. This provision in article V, section 1, did not take away any administrative power or duty he was performing with respect to the retirement system. It restricted the Legislature from assigning to him administrative duties in the future, except those incidental to the requirements enumerated. The word " incidental " may be very broad or limited.

When article V, section 7, of the Constitution went into effect July 1, 1940, which provided for a contractual relationship between the State and a member of the system, no provision was embodied for the administration of the system. It is evident that the convention did not consider any change necessary, or it would have provided for it.

From a reading of the record it clearly appears that petitioner had a just and fair hearing pursuant to section 54 of the Civil Service Law.

The determination of the Comptroller should be confirmed.

HILL, P. J., HEFFERNAN, FOSTER and DEYO, JJ., concur.

Determination confirmed, with $50 costs and disbursements.