## Elwyn Training School Appropriation

ADAMS, Deputy Attorney General, COHEN, Attorney General, October 19, 1956.—This department is in receipt of your letter of July 10, 1956, in which you ask to be advised with regard to the appropriations made to the Elwyn Training School, Elwyn, for the maintenance of wards of the Commonwealth.

You call attention to the Act of April 12, 1956, Act No. 53-A, amending the Act of August 22, 1953, by changing the maximum per capita allowance for the expired biennium from $850 to $960 per annum. Section 1 of Act No. 53-A reads as follows:

"Section 1. An appropriation is hereby made to the Elwyn Training School at Elwyn in the County of

Delaware Commonwealth of Pennsylvania for the maintenance of six hundred (600) wards of the Commonwealth at nine hundred sixty dollars ($960) per capita per annum and the sum of one million twenty thousand dollars ($1,020,000) or as much thereof as may be necessary is hereby specifically appropriated to the said institution for the purpose stated to cover the two fiscal years beginning June first one thousand nine hundred fifty-three. Absences or vacations of three weeks or less in any fiscal year shall not be deducted but any absences or vacations in excess of three weeks in any fiscal year shall be deducted."

You cite article III, sec. 11, of the Constitution, and ask whether the requisitions for the increased per capita cost shall be approved for payment.

Article III, sec. 11, of the Constitution reads:

"No bill shall be passed giving any extra compensation to any public officer, servant, employe, agent or contractor, after services shall have been rendered or contract made, nor providing for the payment of any claim against the Commonwealth without previous authority of law."

It is a well established principle of law that the control of State finances rests with the legislature, subject only to constitutional restrictions: Leahey v. Farrell, 362 Pa. 52 (1949) ; Commonwealth ex rel. v. Liveright, 308 Pa. 35 (1932).

In the latter case, our Supreme Court said at page 67:

"Legislative power is vested in the General Assembly by article II, section 1, and its power is supreme on all such subjects unless limited by the Constitution. The control of the state's finances is entirely in the legislature, subject only to these constitutional limitations; and, except as thus restricted, is absolute. Unless expressly prohibited or otherwise directed by

that instrument, appropriations may be made for whatever purposes and in whatever amounts the law-making body finds desirable. The legislature in appropriating is supreme within the limits of the revenue and moneys at its disposal."

The question arises as to whether the increase comes within the constitutional prohibition of article III, sec. 11.

There is no written contract between the Commonwealth and the Elwyn Training School. This school is a private institution, founded in 1852, and has patients other than those maintained by the Commonwealth. It submits quarterly requisitions to the Department of the Auditor General, whereupon representatives of that department visit the school for the purpose of establishing the validity of the financial representations included in the quarterly requisitions. After audit by the Auditor General and approval by that department and the Department of Welfare, the requisitions are processed for payment.

Turning to the legal question, it is clear that the Elwyn Training School is not a public officer, servant, employe or agent. The question may thus be reduced to: "Is the Elwyn Training School a contractor, in the sense that term is used in the Constitution", or, in other words, does the statute constitute a contract between the Commonwealth and the school.

The Supreme Court of the United States in the case of Dodge v. Board of Education of Chicago, 302 U. S. 74 (1937), at pages 78-79, said:

"The parties agree that a state may enter into contracts with citizens, the obligation of which the legislature can not impair by subsequent enactment. They agree that legislation which merely declares a state policy, and directs a subordinate body to carry it into effect, is subject to revision or repeal in the discretion

of the legislature. The point of controversy is as to the category into which the Miller Law falls.

"In determining whether a law tenders a contract to a citizen it is of first importance to examine the language of the statute. If it provides for the execution of a written contract on behalf of the state the case for obligation binding upon the state is clear. Equally clear is the case where a statute confirms a settlement of disputed rights and defines its terms. On the other hand, an act merely fixing salaries of officers creates no contract in their favor and the compensation named may be altered at the will of the legislature. This is true also of an act fixing the term or tenure of a public officer or an employe of a state agency. The presumption is that such a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise. He who asserts the creation of a contract with the state in such a case has the burden of overcoming the presumption. If, upon a construction of the statute, it is found that the payments are gratuities, involving no agreement of the parties, the grant of them creates no vested right."

One of the cases cited in support of this last proposition arose in Pennsylvania (Butler v. Pennsylvania, 10 How. 402), where it was held that a Pennsylvania law reducing the pay of a State officer and removing him was not a violation of the Federal constitutional provision prohibiting the impairment .of contracts, since the appointment to the office and the statute itself did not create a contract. This case, Butler v. Pennsylvania, supra, arose in 1844, when the constitutional provision with regard to increasing or decreasing salaries applied only to the Governor and judges. At page 411 the court said:

"Commonwealth v. Mann, 5 Watts & Serg. 418: 'The point that it is a contract, or partakes of the

nature of a contract, will not bear the test of examination.'

"Barker v. City of Pittsburgh, 4 Barr 51: 'That there is no contract, express or implied, for the permanence of a salary, is shown by the constitutional provision for the permanence of the salaries of the Governor and judges as exceptions.' "

In the case of Wisconsin and Michigan Railway Co. v. Powers, 191 U. S. 379 (1903), the Supreme Court had before it the question as to whether in a general tax law providing that railroads thereafter building and operating a road south of a certain parallel shall be exempted from the tax for 10 years unless the gross earnings shall exceed a certain sum constituted a contract, the obligation of which could not be impaired consistently with the Constitution of the United States. The court, speaking through Mr. Justice Holmes, held that there was no contract and that the act "simply indicates a course of conduct to be pursued, until circumstances or its views of policy change".

Applying the language of the opinions above cited to the question before us, it is clear that the law does not provide for the execution of a contract, nor does it confirm a settlement of disputed rights. It is similar to a statute fixing the salary of an officer at a certain figure which the court held to be no contract.

The question arises as to whether this view is contradictory of our position in Formal Opinion No. 664, wherein we cited the case of Teachers' Tenure Act Cases, 329 Pa. 213 (1938). In this latter case, the Supreme Court held that school teachers are *public employes* having *contracts* of employment with the school districts by which they are employed.

In fact, the law under consideration in that case, as well as present law, provides that *written contracts* in a prescribed form shall be entered into between the school districts and the teachers.

This is the very situation referred to in the second paragraph of the cited excerpt from Dodge v. Board of Education of Chicago, supra.

Thus, there is no conflict between the position taken in Formal Opinion No. 664 and the position taken in this opinion, since the situations are distinguishable on the facts and principles involved.

Having in mind the opinon of the Supreme Court in Commonwealth ex rel. v. Liveright, supra, that the legislature in appropriating is supreme, subject only to constitutional limitations, and the fact that no contract exists by virtue of the statute, we are of the opinion that Act No. 53-A does not come within the constitutional prohibition of article III, sec. 11, and the requisitions for the increased per capita cost should be approved for payment.