SAMUEL B. BORTEL, Jr., SAMUEL POLLOCK AND FRANK P. PRIMIANO, PLAINTIFFS, v. THE BOARD OF EDUCATION OF THE TOWNSHIP OF CHERRY HILL, IN THE COUNTY OF CAMDEN, NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided May 31, 1967.

*Mr. William B. Hutchinson, Jr.* for plaintiffs.

*Mr. Edward H. Flemming* for defendant.

WICK, J. S. C. This is an action for declaratory judgment seeking to have *N. J. S. A.* 43:3–1 declared to be unconstitutional both on its face and also insofar as it affects the right of the individual plaintiffs to receive the benefits of previously earned pensions.

The facts of the case are not disputed, and the entire cause of action has been submitted to the court on memoranda filed by the opposing parties. The State of New Jersey, through the office of the Attorney General, has also submitted a brief in behalf of the Teachers' Pension and Annuity Fund and all other state-administered pension funds.

For the sake of brevity the facts may be somewhat capsulized since all three plaintiffs find themselves in the same basic position. Plaintiffs Pollock and Primiano both taught in the Philadelphia public school system before coming to defendant board of education. Both are eligible to receive their pension from the Pennsylvania Teachers' Retirement and Annuity Fund.

Plaintiff Bortel was an employee of the Philadelphia Police Department for 20 years prior to his association with the defendant, and was entitled to receive his pension from the City of Philadelphia Police and Firemen's Pension Fund.

All three plaintiffs have been associated with defendant for several years, Bortel and Primiano since 1960 and Pollock since 1962. Recently defendant notified plaintiffs of the provisions of *N. J. S. A.* 43:3–1 and informed them that they could continue their association with defendant, but only if they notified their pension boards that for the duration of said association all pension payments were to be suspended, or in the alternative they could continue to receive their pension payments and forego any right to a salary.

Plaintiffs attack the validity of the provisions of *N. J. S. A.* 43:3–1 on several grounds. They allege that the statute

is a denial of equal protection of the law in that the classification drawn therein is arbitrary, discriminatory and without reasonable basis. Secondly, plaintiffs argue that the statute deprives them of property without due process of law, in violation of the Fourteenth Amendment of the United States Constitution and of the provisions of the New Jersey Constitution relating to the taking of property without just compensation. Finally, they contend that the statute is a wrongful and illegal interference with free enterprise and with their right to work where and for whom they please.

*N. J. S. A.* 43 :3–1 reads as follows:

"Any person who is receiving or who shall be entitled to receive any pension or subsidy from this or any other State or any county, municipality or school district of this or any other State, shall be ineligible to hold any public position or employment other than elective in the State or in any county, municipality or school district, unless he shall have previously notified and authorized the proper authorities of said State, county, municipality or school district, from which he is receiving or entitled to receive the pension that, for the duration of the term of office of his public position or employment he elects to receive (1) his pension or (2) the salary or compensation allotted to his office or employment. Nothing in this chapter shall be construed to affect any pension status or the renewal of payments of the pension after the expiration of such term of office except that such person shall not accept both such pension or subsidy and salary or compensation for the time he held such position or employment."

The predecessor of this statute was before the courts in 1932, the end result being that *chapter* 259 of the *Laws of 1932* was held to be constitutional. *Turner v. Passaic Pension Commission,* 112 *N. J. L.* 476 *(Sup. Ct.* 1932). Though the equal protection argument was not advanced before that tribunal, this court feels that it would be improper, in light of the *Turner* decision, to entertain an overall attack on the validity of *N. J. S. A.* 43 :3–1, it being determined there that the public policy of this State precludes one who is receiving a pension pursuant to prior public employment in this State from receiving in addition thereto a salary from the State of New Jersey or any municipality thereof.

However, the statute presently before the court goes beyond *chapter* 259 of the *Laws of* 1932. It provides that anyone receiving a pension from any state or municipality who obtains employment from the State of New Jersey or any municipality thereof must notify the proper authority that for the duration of said employment all pension payments are to be suspended or he must accept his pension to the exclusion of any salary. The language extending the scope of the law was added by *chapter* 212 of the *Laws* of 1933.

■ New Jersey has determined that no one who receives a pension from New Jersey or a municipality thereof has a right to said pension and that the pension is not the result of a contract. *Turner v. Passaic Pension Commission, supra.* This rule was reiterated as recently as 1964 in the decision delivered by Chief Justice Weintraub in *Spina v. Consolidated Police, etc., Pension Fund Commission,* 41 *N. J.* 391 (1964).

"This is in harmony with the general approach in our State that the terms and conditions of public service in office or employment rest in legislative policy rather than contractual obligation, and hence may be changed except of course insofar as the State Constitution specifically provides otherwise."

Nor can one question the authority of the State of New Jersey to so determine the nature or character of these terms or conditions within constitutional bounds. *Dodge v. Board of Education,* 302 *U. S.* 74, 58 *S. Ct.* 98, 82 *L. Ed.* 57 (1937).

■ Thus, it is clear that insofar as an individual's pension payments are derived from prior public service with the State of New Jersey, he has no right to receive them since they are not the result of a contract and the statute here in question in no way infringes on their right to property under the New Jersey or Federal Constitution.

The same is not so clear when, as here, the statute also forces a suspension of pension payments to those who receive those payments pursuant to prior public service in another state and who seek public employment in New Jersey. It

then becomes necessary to determine how the other state has characterized its pension funds and the individual's interest therein.

In the instant case we must turn to the laws of Pennsylvania, for all three plaintiffs have derived their pensions from prior public service in that state. Numerous decisions of the Pennsylvania courts make it clear that pension or retirement fund payments are considered to be "adjusted compensation" when the employee has contributed to the fund. *Retirement Board of Allegheny Co. v. McGovern*, 316 *Pa.* 161, 174 *A.* 400 (*Sup. Ct.* 1934).

Twenty years later the Supreme Court of Pennsylvania handed down its decision in *Hickey v. Pension Board of City of Pittsburgh*, 378 *Pa.* 300, 106 *A. 2d* 233, 52 *A. L. R. 2d* 430 (1954). That case is quite similar to the one at bar. Hickey had worked for the City of Pittsburgh for more than 20 years. Upon retiring he obtained employment with the County of Allegheny. Defendant pension board suspended its payments to plaintiff pursuant to an act of the Pennsylvania Legislature. The court in reaching its decision clearly enunciated the policy of Pennsylvania to treat the rights arising under these pension systems as contractual obligations, binding upon the pension fund, provided the public employee has fulfilled all the requirements placed on him:

"Hickey agreed to work for the City 20 years and to pay certain sums into the Pension Fund. He has fulfilled those conditions. The City agreed, in its turn, to pay Hickey a pension or compensation for the remainder of his life when he reached his 60th year. Shutting off the pension because he obtained employment elsewhere is refusal on the part of the Pension Fund to abide by its contract."

There are numerous other cases in Pennsylvania which reach this same conclusion and which need not be cited here. Nor is Pennsylvania the only state which so characterizes an individual's interest in a pension fund. (For a general discussion of the treatment of a pensioner's right in a pension fund see the annotation to *Hickey v. Pittsburgh Pension Board* in 52 *A. L. R. 2d* 437.)

■■ Having established that plaintiffs in the present action have a vested right to their pension payments and having also determined that New Jersey can set the terms or conditions of public employment in this State, the issue resolves itself to whether New Jersey can condition public employment on the suspension of a constitutionally protected right.

Under the rule enunciated in *Adler v. Board of Education,* 342 *U. S.* 485, 72 *S. Ct.* 380, 96 *L. Ed.* 517 (1952), it might well be argued that the law *per se* deprives plaintiffs of nothing. Rather, it requires them to make a choice, which choice, freely made by plaintiffs, is the sole cause of the loss of any rights. If they choose to work for the State of New Jersey they may not receive their pension and a salary. If they find this prospect unpalatable they may turn to private industry and collect both.

However, the recent case of *Keyishian v. Board of Regents of New York,* 385 *U. S.* 589, 87 *S. Ct.* 675, 17 *L. Ed.* 2d 629 (1966), has specifically rejected the rationale employed in *Adler.*

"* * * But constitutional doctrine which has emerged since that [the Adler] decision has rejected its major premise. That premise was that public employment, including academic employment, may be conditioned upon the surrender of constitutional rights which could not be abridged by direct government action."

This court would not seek to impose the rigid standards applied in *Keyishian* to the case at bar. The *Keyishian* case dealt with the rights of free speech and association, which have always been given special safeguards due to the high esteem in which this country holds these rights. Notwithstanding the special nature of these rights, "the theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." *Keyishian v. Board of Regents,* 2 *Cir.,* 345 *F. 2d* 236, affirmed 385 *U. S.* 589, 87 *S. Ct.* 675, 17 *L. Ed. 2d* 629 (1966).

In short, any restrictive conditions on public employment which affect, either directly or indirectly, the constitutionally protected right of every person to his property must have a basis in reason and serve a valid public interest. *L.* 1932, *c.* 259, was previously determined to be a proper exercise of state authority. But *L.* 1933, *c.* 212 extended that law, and solely for the purpose of putting New Jersey pensioners on an equal footing with out-of-state pensioners coming into New Jersey and seeking public employment. The act, introduced as *Senate Bill* 275, contained the following statement:

"The object of this act is as follows: The act was passed in 1932 to prevent people who received pensions and gratuities, filling offices and employment in the state to the exclusion of others. This amendment is to provide the same rule with respect to those who are receiving pensions from outside of the State. New York and Pennsylvania Policemen who have been retired in their respective States, have in some instances, come to New Jersey and received appointments. At the present time, they have an advantage over New Jersey men, the object of this amendment being to put them in the same position as our own residents."

It would appear that the 1933 amendment completely disregards the fact that other states may attach greater importance to the rights of pensioners under their respective plans. Had the present plaintiffs come from states which treat pension funds in a manner similar to New Jersey, they could not complain that their rights were being affected. But plaintiffs do, in fact, have a vested right under the laws of Pennsylvania which New Jersey is affecting for the sole purpose of preventing out-of-state public pensioners from gaining an advantage over New Jersey public pensioners. This is not such a reasonable basis as will sustain an infringement on a constitutionally protected right.

Nor can the court accept the argument of the Attorney General that *L.* 1933, *c.* 212 is merely an attempt to further the valid public policy of insuring the soundness of all pension systems. Plaintiffs are in no way affecting the integrity of a New Jersey pension fund for, unlike the New Jersey

public pensioner who is reemployed in public service and who contributes to one New Jersey pension fund while drawing from another, or who contributes to and draws from the same New Jersey pension fund, plaintiffs are contributing to the Teacher's Pension and Annuity Fund but are drawing nothing therefrom or from any other New Jersey fund.

In light of the above, it is the opinion of this court that *N. J. S. A.* 43 :3–1 is unconstitutional insofar as it affects the rights of an individual who receives a pension for prior public service in a state which considers that such pension systems create contractual or vested rights.

Judgment will be entered accordingly.