William **ROBERTSON**, Cynthia Carlisle, Russell Hathhorn, Christopher Meyers, Michael Simpson, Janet Bowler, Larry Dean, and Jean DeJarnett, Plaintiffs,

v.

Governor Theodore **KULONGOSKI** (Official Capacity), Dawn Morgan (Official Capacity), Janice Deringer (Official Capacity), Mark Gardiner (Official Capacity), Jeanne Garst (Official Capacity), Glenn Harrison (Official Capacity), Todd Schwartz (Official Capacity), George Russell (Official Capacity), Defendants.

No. CV 03–999–MO.

United States District Court,
D. Oregon.

Aug. 19, 2004.

Aruna A. Masih, Gregory A. Hartman, Thomas K. Doyle, Hartman, Morris & Kaplan LLP, Portland, OR, for Plaintiffs.

Charles F. Hinkle, Stephen Scott Walters, Stoel Rives, LLP, Townsend Hyatt,

Orrick, Herrington & Sutcliffe, LLP, Portland, OR, Heather L. Reinschmidt, James P. Baker, Virginia H. Perkins, Orrick, Herrington & Sutcliffe, LLP, San Francisco, CA, for Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

MOSMAN, District Judge.

This case involves the allegation that the PERS reform legislation violates the Contract Clause of the United States Constitution. Defendants move for summary judgment, arguing the statutory changes only implicate future benefits. Plaintiffs move for partial summary judgment arguing the contract created by Oregon Revised Statutes ("ORS") Chapter 238 provides plaintiffs with a right to future benefits for past and future service, which defendants breached.

The court concludes the PERS statutory scheme creates a contract between the State of Oregon and its employees. The Contract Clause, however, is not violated here because plaintiffs fail to show the 2003 amendments to ORS Chapter 238 apply retroactively. For this reason, defendants' Motion for Summary Judgment is GRANTED, while plaintiffs' Motion for Partial Summary Judgment is DENIED.

## I. BACKGROUND

The 2003 Oregon Legislative Assembly passed a series of bills, which Governor Kulongoski signed into law, designed to modify the terms of Oregon's Public Employment Retirement System ("PERS"). These laws are known as the PERS Reform and Stabilization Act of 2003 (the "Reform Legislation").

The motivation for the Reform Legislation is stated in the preamble to HB 2003.

Whereas it is the policy of the State of Oregon to provide career public employees adequate and secure retirement benefits at a reasonable, affordable and stable cost to taxpayers; and

Whereas since 1995 the cost to taxpayers of funding the Public Employees Retirement System (PERS) has increased dramatically, with the cost of PERS increasing when PERS investment income was good and the cost of PERS continuing to increase when PERS investment income was poor; and

Whereas PERS now has an unfunded actuarial liability of $16.41 billion, and the burden of eliminating that deficit will fall on the taxpayers unless the causes of that unfunded liability are remedied; and

Whereas as a result of errors by the Public Employees Retirement Board, some retirees are receiving benefits that exceed the benefits provided by law, and the cost of paying for those benefits continues to increase; and

Whereas unless steps are taken to reform and stabilize PERS, the costs of paying for retirement benefits will continue to grow; and

Whereas escalating costs threaten the stability of the Public Employees Retirement Fund and the security of benefits intended for members who have not yet retired....

The preamble continues with a recitation of various court decisions that found computational errors requiring corrections for the PERS benefits to be lawful and secure.

Plaintiffs are current and former employees and "Tier One" [1] PERS members, who claim the Reform Legislation violates

---

1. "Tier One" members of PERS became members before January 1, 1996. The distinction between Tier One members and non-Tier One members is immaterial to this order.

their contractual pension rights. Defendants are the Governor of Oregon and the members of the Public Employees Retirement Board ("PERB") in their official capacity. Plaintiffs brought this action under 42 U.S.C. § 1983, alleging the Reform Legislation violates the Contract Clause, U.S. Constitution, Art. I, § 10, cl. 1. Plaintiffs desire this court to declare the Reform Legislation unconstitutional and enjoin defendants from implementing its changes to PERS. Defendants urge the court to find that no accrued benefits are altered by the Reform Legislation; that future benefits are altered but such future alterations do not violate the Contract Clause.

Oral argument on the motions for summary judgment was held on April 19, 2004. On April 20, 2004, the court requested additional briefing on "how HB 2003 & HB 2004 specifically affect Tier 1 employees' benefits for work performed prior to the effective date of the legislation...." (Minute Order, Docket No. 44, 4/20/04).

## II. DISCUSSION: CONTRACT CLAUSE INTERPRETATION

Article I, section 10, clause 1 of the United States Constitution states: "No State shall ... pass any ... Law impairing the Obligation of Contracts." Although its text is "facially absolute," the Supreme Court has long found that the Contract Clause's "prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 410, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 434, 54 S.Ct. 231, 78 L.Ed. 413 (1934)).

The modern usage of the Contract Clause as a check against public contracts was revived by the Supreme Court in *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). In *United States Trust*, the New Jersey legislature sought to repeal legislation that implemented a limitation agreement designed to reassure Port Authority bondholders regarding the financial security of bonds. The Supreme Court found that because the legislature was seeking to relieve the state of its own obligation, no deference to legislative judgment was required. Therefore, the Supreme Court assessed whether the state's action was "necessary and reasonable." The Supreme Court struck down the law as both unnecessary and unreasonable because alternative means were available to promote the goals sought to be promoted by the legislation.

Since *United States Trust*, courts have developed a three-step scheme for determining whether legislation that involves the contractual obligations of a governmental unit violates the Contract Clause. "The threshold inquiry is 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Energy Reserves*, 459 U.S. at 411, 103 S.Ct. 697 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)); see also *Rui One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir.2004). If this threshold inquiry is met, the court must secondarily inquire whether "the State, in justification, [has] a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem." This requirement guarantees that "the State is exercising its police power, rather than providing a benefit to special interests." *Energy Reserves*, 459 U.S. at 411–12, 103 S.Ct. 697 (citation omitted). Third, the court must inquire "whether the adjustment of 'the rights and responsibilities of contracting parties is based upon reason-

able conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.'" *Id.* at 412, 103 S.Ct. 697 (quoting *United States Trust,* 431 U.S. at 22–23, 97 S.Ct. 1505) (footnote omitted). "Courts defer to a lesser degree when the State is a party to the contract because 'the State's self-interest is at stake.'" *Rui One,* 371 F.3d at 1147 (quoting *United States Trust,* 431 U.S. at 25–26, 97 S.Ct. 1505).

■ The initial inquiry—whether the state law "has operated as a substantial impairment of a contractual relationship"—itself has three components. *Rui One,* 371 F.3d at 1147 (internal quotation omitted). A court must first inquire whether a contract exists. If so, the court next must inquire whether the law in question impairs an obligation under the contract. If so, the court then must inquire whether the discerned impairment can fairly be characterized as substantial. *See General Motors Corp. v. Romein,* 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992).

## STEP ONE OF THE THRESHOLD INQUIRY: IS THERE A CONTRACT?

■ The first step in determining whether the Contract Clause prohibits legislation reducing or impairing public retirement benefits is to determine if there is a contract between the state and the employee for the benefits. This determination is made in accordance with state law and the legislation allegedly creating the contract. *See National R.R. Corp. v. Atchison, Topeka Co.,* 470 U.S. 451, 465, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985). If there is no contract, then the Contract Clause does not protect those benefits.

Oregon does not have an explicit constitutional provision regarding the contractual nature of pensions. Likewise, plaintiffs cite nothing in Chapter 238 of Oregon Revised Statutes stating the Oregon pension is contractual. Defendants urge that because PERS is created by statute, there is no presumption of a contractual right to a certain level of PERS benefits. "[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Atchison,* 470 U.S. at 465–66, 105 S.Ct. 1441 (quoting *Dodge v. Board of Education,* 302 U.S. 74, 79, 58 S.Ct. 98, 82 L.Ed. 57 (1937)); *see also United States Trust,* 431 U.S. at 17 n. 14, 97 S.Ct. 1505 ("[A] statute is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State.") Put simply, the legislative intent to create a contract must be "clearly and unequivocally expressed." *Atchison,* 470 U.S. at 466, 105 S.Ct. 1441.

Plaintiffs assert the law in this circuit is that employees "have contractual rights in pension plans." *State of Nevada Employees Ass'n v. Keating,* 903 F.2d 1223, 1227 (9th Cir.1990). In *Keating,* the issue of whether the public employees retirement system created contractual rights for employees had been decided by the Nevada Supreme Court in *Washoe County, infra.* Instead of focusing on whether a contract existed, *Keating* explores whether the Nevada legislature's 1983 amendment to their PERS legislation constituted a "substantial impairment" to a contract that was "reasonable and necessary." The Ninth Circuit concluded "that the changes in Nevada's public employees' pension scheme were not necessary." *Id.* at 1228. Consequently, the Ninth Circuit held "that the Nevada legislation unconstitutionally impaired the State's contractual obligations." *Id.* But *Keating* does not go as far as plaintiffs suggest. It does not hold that

employees are entitled to an inalterable level of benefits. Rather, the Ninth Circuit found in *Keating* that, based on the prior pronouncement of the Nevada Supreme Court, the benefits at issue were unconstitutionally impaired.

Plaintiffs also rely on *Oregon State. Police Officers' Assoc. v. State. of Oregon,* 323 Or. 356, 918 P.2d 765 (1996) ("OSPOA"). In that case, the Oregon Supreme Court found the PERS scheme creates a contract between the state and its employees. Defendants urge this court not to follow OSPOA, arguing it is a plurality decision that defendants are now challenging before the Oregon Supreme Court. While defendants pursue ·their challenge in state court, this court must consider OSPOA to remain a valid statement of Oregon law.

Consequently, while this court finds nothing in the PERS statute that explicitly creates a· contract, the Oregon Supreme Court has found a contract to exist. Following the logic of *Keating,* which relies on a prior Nevada Supreme Court decision finding the existence of a contract, this court defers to the *OSPOA* decision and finds that the Oregon PERS scheme does create a contract.

The next question is to determine what sort of a contract PERS establishes and whether the Reform Legislation substantially impairs that contract.

**STEP TWO: DOES THE REFORM LEGISLATION CONSTITUTE A SUBSTANTIAL IMPAIRMENT OF A CONTRACTUAL RELATIONSHIP?**

■ Plaintiffs assert that the PERS contract establishes for employees a right to a fixed level of benefits.· Those benefits, according to plaintiffs, may be increased (as they have been in the past) but never reduced.

Plaintiffs· again urge the court to follow *OSPOA.* In *OSPOA,* the Oregon Supreme Court held that a *prospective* amendment to the PERS statutes violated the federal

Contract Clause. 323 Or. at 375, 380–81, 918 P.2d 765. Defendants assert that *OSPOA* is not good law on this point and should not be followed by this court. This court has already followed *OSPOA* on the state law issue of whether the PERS statutes create a contract. However, this court is not obligated to follow state court pronouncements on federal law and, therefore, *OSPOA* is not instructive on whether the PERS statutes violate the federal Contract Clause. This is especially true because *OSPOA* relies on state and not federal case law.

Defendants argue the plain language of the PERS statutes fails to show a clear legislative intent to create a contractual obligation on behalf of the State of Oregon that can never be prospectively amended or altered. *See National Educ. Ass'n–Rhode v. Retirement Bd.,* 172 F.3d 22, 28–29 (1st Cir.1999)(analyzing whether plain language of Rhode Island pension plan created future inalterable benefits).

Such an omission in the PERS statutes is important. The Contract Clause does not prohibit legislation that operates prospectively. *See United States Trust,* 431 U.S. at 18 n. 15, 97 S.Ct. 1505 ("States undoubtedly [have] the power to repeal the covenant prospectively.") (citing *Ogden v. Saunders,* 25 U.S. (12 Wheat) 213, 6 L.Ed. 606 (1827)). If the State of Oregon is to be bound to provide employees a set level of benefits in perpetuity, such a legislative intent must be clear. Here it is not. The court finds nothing in ORS §§ 238.200, 238.205 and 238.250 giving plaintiffs a right to a fixed level of future PERS benefits. *See Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 504, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987) ("we begin by identifying the precise contractual right that has been impaired and the nature of the statutory impairment.").

Plaintiffs additionally argue that *Keating* guarantees that public employees "gained a right not only to what was in their accounts, but also to the terms in existence at the time of their employment for future service." (Plaintiffs' Memo. in Response to Motion for Summary Judgment, p. 25). Put another way, plaintiffs argue an employee secures a right to future benefits based on partial performance, analogous to a unilateral contract. But the dicta cited by plaintiffs from *Keating* does not support plaintiffs' position that the PERS statutes create a unilateral contract guaranteeing a right to a previously established level of retirement benefits *ad infinitum*. Because the court finds that the PERS contract does not guarantee prospective benefits for future work, the Contract Clause is only affected if the Reform Legislation operates retrospectively.

The court next turns to whether the Reform Legislation has a retroactive effect: whether it alters accrued benefits for completed work. Consequently, each claim for relief is addressed in turn.

**First Claim for Relief: HB 2003, Section 1; Elimination of Employees Accounts**

■ Plaintiffs complain that ORS § 238.200, which once required 6% of a member's salary to be placed into an individual account, now requires employers to place funds in a "transitional account" effective January 1, 2004. (Complaint, ¶¶ 23 & 24). The result, according to plaintiffs, is that "the benefits plaintiffs will receive upon retirement as calculated under ORS § 238.200 will be substantially reduced." (*Id.,* ¶ 24). Plaintiffs assert this change unconstitutionally impairs the contract between public employees and the State of Oregon in violation of the Contract Clause. (*Id.,* ¶ 25).

Plaintiffs do not show how prospectively changing the PERS "individual account"

into a new "transition account" results in any reduction of value of member accounts. The court finds nothing in the statute to conclude that the change to section 1 results in a retroactive reduction to the value of a member's account for past service. In fact, the statutory amendment itself provided that change to transitional accounts would not occur until after *January 1, 2004*. The Reform Legislation leaves untouched member accounts in existence before January 1, 2004. No violation of the Contract Clause can be proven and summary judgment favoring defendants is appropriate on the First Claim for Relief.

**Second Claim for Relief: HB 2003, Sections 5 & 6; Elimination of Guaranteed Rate**

Plaintiffs allege that prior to the enactment of sections 5 and 6 of HB 2003, ORS § 238.255 guaranteed earnings on their accounts of at least 8%. (*Id.,* ¶ 31). They allege sections 5 and 6 of HB 2003 remove this 8% floor on growth, and thereby impair their PERS contract in violation of the Contract Clause. (*Id.,* ¶¶ 32 & 33).

■ Actually, the PERS statutes do not guarantee any specific rate of earnings, but instead provide for the crediting at "the assumed interest rate for that year as determined by the board." ORS § 238.255. Consequently, even prior to the Reform Legislation, PERB had discretion in setting the assumed interest rate and could raise or lower it for any year.

In any event, while sections five and six do create the possibility of lower future benefit calculations for members (should their transitional accounts not earn at least eight percent) there is no evidence that such changes affect past, accrued benefits and are, therefore unlawful. PERS members were never entitled to have any particular rate of interest credited to their account for work already performed. *A fortiori,* they were never entitled to a

guaranteed rate of interest into the future. Consequently, the second claim for relief does not violate the Contract Clause as it operates prospectively.

**Third Claim for Relief: HB 2003, Sections 5 & 6; Repayment of Deficit**

■ In the third claim for relief, plaintiffs maintain that sections five and six also modified ORS § 238.255 by removing a guarantee that the gain-loss reserve not be in deficit for more than five years. (*Id.,* ¶ 37). Prior to the Reform Legislation, public employers were responsible for paying for any deficit in the reserve, with a guarantee they would not have to do so for more than five years. (*Id.*) Plaintiffs assert that the legislative change to ORS § 238.255(1) may reduce the earnings on a vested member's account in five years.[2]

The court cannot know whether this modification could apply retroactively until several years from today. If the provision did apply retroactively, say by changing benefits that would have accrued in 2002, then a plaintiff may have a valid claim under the Contract Clause. Today, however, it is purely speculative to assume that the gain-loss reserve will be in a deficit in the future. *See Clinton v. Acequia, Inc.,* 94 F.3d 568, 572 (9th Cir.1996) (federal courts normally ought not resolve issues "involv[ing] contingent future events that may not occur as anticipated, or indeed may not occur at all.") (quoting *Railroad Reorganization Act Cases,* 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) and *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)).

No Contract Clause claim is ripe under the third claim for relief.

**Fourth Claim for Relief: HB 2003, Sections 7 & 8; Change in Method of Crediting Accounts**

■ Under former ORS § 238.255, each PERS member account was credited with either earnings or the assumed interest rate at the end of each year. (*Id.,* ¶ 44). Sections 7 and 8 of HB 2003, however, changed the minimum crediting of plaintiffs' accounts to a career-long basis, arguably reducing future benefits and, according to plaintiffs, violating the Contract Clause. (*Id.,* ¶¶ 45 and 46).

There are no facts indicating that plaintiffs' fourth claim for relief applies retroactively. The amounts already accrued in a member's account remain unaltered. The fourth claim for relief does not apply retroactively and thus does not establish a violation of the Contract Clause.

**Fifth and Seventh Claims for Relief: HB 2003, Sections 9, 10 & 14b(1)(A); COLA Remedy in *City of Eugene v. State of Oregon***

■ Plaintiff Hathhorn is retired and receives PERS benefits. (*Id.,* ¶ 63). Plaintiff Hathhorn challenges Sections 9, 10 & 14b(1)(a) of HB 2003, which lower the 1999 earnings credit and withhold COLA benefits until excess benefit contributions are recovered.[3] (*Id.,* ¶ 66).

ORS § 238.715 allows PERB to recover any excess payment from a member who received an amount greater than their legal entitlement. In HB 2003 9, 10 &

---

**2.** ORS § 238.255(1)(2001) provides, in relevant part, that:

From time to time, the board shall determine the liabilities of the system and shall set the amount of contributions to be made by participating public employers, and by other public employers who are required to make contributions on behalf of members to ensure that those liabilities will be fund-

ed no more than 40 years after the date on which the determination is made.

**3.** In *City of Eugene v. State of Oregon,* Marion County No. 99C–12794, an Oregon circuit court held that PERB incorrectly calculated PERS member benefits in violation of law. (*Id.,* ¶ 65).

14b(1)(a), the legislature made a determination that in order to comply with the *City of Eugene* decision, the amount of overpayment made in 1999 would be adjusted by reducing the COLA in 2004 and by lowering the earnings credit for 1999 to 11.33 percent. These decisions do not have a retroactive effect. They have a curative effect. Stated another way, the law does not retroactively reduce lawful benefits, it reduces unlawfully accrued benefits. Similarly, it would be proper for the legislature to overcompensate with a COLA adjustment and an increased earnings credit if a court were to find that a prior year's earnings were understated.

The adjustments lower a future benefit to cover a past overpayment and are consistent with ORS § 238.715, which existed prior to the Reform Legislation. PERB has always had the right to recoup overpayments. Sections 9, 10 & 14b(1)(a) were not passed to diminish an existing contract, but to enforce the contract as constituted between the State and members. There is no impairment of the Contract Clause as there is no retroactive change to the contract between the State and PERS members.

**Sixth Claim for Relief: HB 2003, Section 3; Elimination of Right to Invest in Variable Account**

Prior to the enactment of Section 3 of HB 2003, ORS § 238.260 provided that PERS members could contribute into a variable account to purchase a variable annuity upon their retirement. Plaintiffs Robertson, Carlisle, Bowler and DeJarnett elected to make such contributions. (*Id.*, ¶ 57). Section 3 of HB 2003, effective January 1, 2004, eliminated the ability to make such variable account contributions. Plaintiffs allege this change will lower their benefit upon retirement and violates the Contract Clause. (*Id.*, ¶¶ 58 & 59).

This claim, like others, is based on plaintiffs' theory that the Contract Clause protects against future harm to plaintiffs for future work. Because the court has concluded that the PERS contract here does not prohibit modification of future benefits for future work, summary judgment is appropriate as plaintiffs fail to state a cognizable Contract Clause claim. The change in the Variable Account was prospective only; member's past contributions were untouched and remain in a Variable Account.

**Eighth Claim for Relief: HB 2003, Section 14b(1)(b); Reduction of Current Employee Accounts to Enforce *City of Eugene v. State of Oregon***

Similar to the Seventh Claim for Relief, this claim alleges that section 14b(1)(b) of HB 2003 considers excess payments in 1999 to be administrative expenses charged to future earnings on active member accounts. (*Id.*, ¶ 72). Again, the legislature made a determination to recoup unlawfully credited earnings, an act that is not a violation of the PERS contract.

**Ninth Claim for Relief: HB 2003, Section 14(b)(2); Employers Not Responsible for Mistaken Benefits**

Under ORS § 238.255, employers are required to "fund PERS in an amount determined to be actuarially necessary to adequately fund the promised benefits." (*Id.*, ¶ 77). Under HB 2003, section 14(b)(2) an "employer's liability to fund the plan is limited by excluding any amount mistakenly paid from that funding obligation." (*Id.*, ¶ 78). The effect, according to plaintiffs, is that the PERS system will no longer be actuarially sound. This claim too does not retroactively diminish accrued benefits, but operates on a going-forward basis and, therefore, does not violate the Contract Clause. Additionally, it is speculative and would only be ripe at a later date.

**Tenth Claim for Relief: HB 2004, Section 4; Retroactive Change of Actuarial Equivalency Factor Tables**

 HB 2004, section 4, requires PERB to adopt new actuarial equivalency factors which, plaintiffs allege, are applied retroactively and thus reduce benefits.

In the *City of Eugene* litigation, the Marion County Circuit Court found the PERB violated ORS § 238.300 by using outdated actuarial factors to calculate member retirement benefits. As a result, member benefits were higher than they legally should have been because the annuity was not "actuarially equivalent" to the member's account balance. In response to this problem, HB 2004 directs the PERB to adopt new equivalency factors once every two calendar years.

HB 2004 is consistent with the former PERS contract provision which required PERB to adopt new actuarial equivalency factors from "time to time." *See* ORS § 238.630(3)(g). By requiring the Board to follow the law, and utilize up-to-date actuarial tables, HB 2004 section 2 does not violate the PERS contract and does not therefore violate the Contract Clause.

### III. CONCLUSION

In analyzing the threshold inquiry for determining whether the Contract Clause has been violated, plaintiffs falter at the second step. Plaintiffs cannot show the Reform Legislation impairs any obligation under the PERS contract. The court concludes as a matter of law the PERS statutes do not guarantee a specific level of future benefits for future work. The legislative changes here are either prospective, curative, or consistent with the pre-existing terms of the contract. While the court finds that a contract exists, no obligation of that contract is violated. Thus, the initial inquiry for determining whether legislation violates the Contract Clause is not met. Defendants' motion for summary judgment is GRANTED. For these same reasons, plaintiffs' motion for summary judgment is DENIED.

Intervenor Marion County's motion for summary judgment and adoption of defendant Kulongoski's memorandum in support (# 29) is GRANTED. Members of PERB's motion for joinder in defendant Kulongoski's motion for summary judgment (# 28) is GRANTED.

IT IS SO ORDERED.