## PHELPS *v.* BOARD OF EDUCATION OF WEST NEW YORK ET AL.*

No. 454.   Argued February 4, 5, 1937.—Decided March 1, 1937.

---

* Together with No. 455, *Askam et al.* v. *Board of Education of West New York et al.*   Appeal from the Court of Errors and Appeals of New Jersey.

*Mr. Robert H. McCarter,* with whom *Mr. Ward J. Herbert* was on the brief, for appellants.

*Mr. Saul Nemser* for appellees.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The people of New Jersey have ordained by their constitution that the legislature "shall provide for the maintenance and support of a thorough and efficient system of free public schools" . . .[1] In fulfillment of this command a comprehensive school law was adopted in 1903 by which boards of education were set up for cities, towns, and school districts throughout the state.[2] Section 106 empowered these boards to make rules and regulations governing engagement and employment of teachers and principals, terms and tenure of such employment, promotion, and dismissal, salaries and their time and mode of payment, and to change and repeal such rules and regulations from time to time.[3] This general school law was amended by the act of April 21, 1909,[4] § 1 of which provides:

"The service of all teachers, principals, supervising principals of the public schools in any school district of this State shall be during good behavior and efficiency, after the expiration of a period of employment of three consecutive years in that district, unless a shorter period is fixed by the employing board; . . . No principal or

---

[1] Art. IV, § VII, ¶ 6, 1 N. J. Comp. St. p. lxxv.

[2] Act of Oct. 19, 1903; Laws of N. J. 1904, 5; 4 N. J. Comp. St. 4724.

[3] 4 N. J. Comp. St. 4762.

[4] Chap. 243 N. J. Laws 1909, Pamph. L. p. 398, 4 N. J. Comp St. 4763, 4764.

teacher shall be dismissed or subjected to reduction of salary in said school district except for inefficiency, incapacity, conduct unbecoming a teacher or other just cause, and after a written charge of the cause or causes shall have been preferred against him or her, . . . and after the charge shall have been examined into and found true in fact by said Board of Education, upon reasonable notice to the person charged, who may be represented by counsel at the hearing. . . ."

An Act of February 4, 1933,[5] premising that existing economic conditions require that boards of education be enabled to fix and determine the amount of salary to be paid to persons holding positions in the respective school districts, authorizes each board to fix and determine salaries to be paid officers and employes for the period July 1, 1933, to July 1, 1934, "notwithstanding any such person be under tenure"; prohibits increase of salaries within the period named; forbids discrimination between individuals in the same class of service in the fixing of salaries or compensation; and sets a minimum beyond which boards may not go in the reduction of salaries. June 23, 1933, the board adopted a resolution reducing salaries for the school year July 1, 1933, to July 1, 1934, by a percentage of the existing salaries graded upward in steps as the salaries increased in amount, except with respect to clerks, the compensation of each of whom was reduced to a named amount.

Appellants, who were principals, teachers, and clerks employed by the appellee, petitioned the Department of Public Instruction, in accordance with the school law, praying that the action of the board be set aside. The Commissioner of Education dismissed the petition and, upon appeal from his action, the State Board of Education affirmed the decision. The appellants applied for certiorari from the Supreme Court, assigning among other

---

[5] Chap. 12, N. J. Laws 1933, Pamph. L. p. 24.

reasons that the decision violated Art. I, § 10, and §1 of the Fourteenth Amendment, of the Federal Constitution. The writs[6] issued and, after hearing, the court affirmed the action of the administrative tribunal.[7] The Court of Errors and Appeals affirmed the judgment upon the opinion of the Supreme Court.[8]

The position of the appellants is that by virtue of the Act of 1909 three years of service under contract confer upon an employe of a school district a contractual status indefinite in duration which the legislature is powerless to alter or to authorize the board of education to alter. The Supreme Court holds that the Act of 1909 "established a legislative status for teachers, but we fail to see that it established a contractual one that the legislature may not modify. . . . The status of tenure teachers, while in one sense perhaps contractual, is in essence dependent on a statute, like that of the incumbent of a statutory office, which the legislature at will may abolish, or whose emoluments it may change."

This court is not bound by the decision of a state court as to the existence and terms of a contract, the obligation of which is asserted to be impaired, but where a statute is claimed to create a contractual right we give weight to the construction of the statute by the courts of the state.[9] Here those courts have concurred in holding that the act of 1909 did not amount to a legislative contract

---

[6] Two writs were issued. The only difference between the two cases, which were heard as one, is that in the *Phelps* case the employe refused to accept the reduced salary. In the case of *Askam et al.*, the employes took the reduced salary under protest.

[7] 115 N. J. Law 310; 180 Atl. 220.

[8] 116 N. J. Law 412, 185 Atl. 8; 116 N. J. Law 416, 184 Atl. 737.

[9] *Freeport Water Co.* v. *Freeport*, 180 U. S. 587, 595; *Tampa Water Works Co.* v. *Tampa*, 199 U. S. 241, 243; *Milwaukee Electric R. & L. Co.* v. *Railroad Comm'n*, 238 U. S. 174, 184; *Seton Hall College* v. *South Orange*, 242 U. S. 100, 103; *Coombes* v. *Getz*, 285 U. S. 434, 441.

with the teachers of the state and did not become a term of the contracts entered into with employes by boards of education. Unless these views are palpably erroneous we should accept them.

It appears from a stipulation of facts submitted in lieu of evidence that after a teacher has served in a school district under yearly contracts for three years it has not been customary to enter into further formal contracts with such teacher. From time to time, however, promotions were granted and salary raised for the ensuing year by action of the board. In the case of many of the appellants there have been several such increases in salary.

Although after the expiration of the first three years of service the employe continued in his then position and at his then compensation unless and until promoted or given an increase in salary for a succeeding year, we find nothing in the record to indicate that the board was bound by contract with the teacher for more than the current year. The employe assumed no binding obligation to remain in service beyond that term. Although the act of 1909 prohibited the board, a creature of the state, from reducing the teacher's salary or discharging him without cause, we agree with the courts below that this was but a regulation of the conduct of the board and not a term of a continuing contract of indefinite duration with the individual teacher.

The resolution of June 23, 1933, grouped the existing salaries paid by the board into six classes the lowest of which comprised salaries between Twelve hundred dollars and Nineteen hundred and ninety-nine dollars; and the highest included salaries ranging between Four thousand dollars and Fifty-six hundred dollars. The reduction in the lowest class for the coming year was ten per cent; that in the highest class fifteen per cent. Salaries in the intermediate classes were reduced eleven,

twelve, thirteen, and fourteen per cent. It resulted that in some instances a teacher receiving the lowest salary in a given bracket would have his compensation reduced to a figure lower than the reduced compensation of one receiving the highest salary in the next lower bracket. From this circumstance it is argued that the board's action arbitrarily discriminated between the employes and so denied them the equal protection of the laws guaranteed by the Fourteenth Amendment.

We think it was reasonable and proper that the teachers employed by the board should be divided into classes for the application of the percentage reduction. All in a given class were treated alike. Incidental individual inequality resulting in some instances from the operation of the plan does not condemn it as an unreasonable or arbitrary method of dealing with the problem of general salary reductions or deny the equality guaranteed by the Fourteenth Amendment.

*Judgments affirmed.*