MALCOLM M. STECK ET AL., PETITIONERS-RESPONDENTS, v. BOARD OF EDUCATION OF THE CITY OF CAMDEN, RESPONDENT-PROSECUTOR.

Argued May 2, 1939—Decided August 14, 1939.

Before Justices PARKER, BODINE and PERSKIE.

For the prosecutor, *Firmin Michel.*

For the respondents, *Meyer L. Sakin.*

The opinion of the court was delivered by

PERSKIE, J.  We are concerned, in this cause, with the question of salaries which the Board of Education of the city of Camden, under the stipulated facts submitted, was obliged to pay to its school teachers after July 1st, 1937.

By chapter 243, *Pamph. L.* 1909, *p.* 398, as amended and supplemented, now *R. S.* 18:13-16, "the services of all teachers * * * shall be during good behavior and efficiency, after the expiration of a period of employment of three years in that district, unless a shorter period is fixed by the employing board * * *."

By *R. S.* 18:13-17, "no teacher * * * shall be * * * subject to a reduction of salary * * * except for inefficiency, incapacity, conduct unbecoming a teacher or other just cause, and after a written charge of the cause or causes has been preferred against him * * * and after the charge has been examined and found true in fact by the board of education upon reasonable notice to the person charged who may be represented by counsel at the hearing. * * *"

By chapter 12, *Pamph. L.* 1933, *p.* 24, the legislature acknowledged the existence of an emergency because of economic conditions, and, therefore, empowered the board of education of every school district in this state "to fix and determine" salaries to be paid officers and employes for the period July 1st, 1933, to July 1st, 1934, "notwithstanding any such person be under tenure or not." That power was not unrestricted. For the legislature prohibited reductions from certain minimum salaries; it prohibited "discrimination among or between individuals in the same class of service;" it fixed a minimum of salary which could not be reduced; and additionally permitted each teacher who was a member of a pension fund to continue paying into said fund the same amount as if the salary of said teacher had not been changed,

and further preserved to the teacher or his beneficiary the resultant benefits flowing from such payments. The act of 1933, *supra,* was subsequently amended and as a result thereof the power to reduce salaries of teachers was extended to July 1st, 1937. Chapter 6, *Pamph. L.* 1935, *p.* 16; chapter 27, *Pamph. L.* 1936, *p.* 42.

Pursuant to the power thus granted the Board of Education of the city of Camden, hereinafter referred to as prosecutor, fixed and determined, by resolutions, the salaries of its school teachers by reducing them on a percentage basis for the period between July 1st, 1933, to July 1st, 1937.

Despite the lack of legislative sanction to reduce salaries of teachers after July 1st, 1937, as provided in the enabling acts of 1933, 1935 and 1936, *supra,* prosecutor adopted two resolutions reducing the salaries of its teachers for the school years of July 1st, 1937, to July 1st, 1938, and July 1st, 1938, to July 1st, 1939.

The first was adopted on February 23d, 1937; the pertinent part thereof reads as follows:

"That one-third of the amount of reductions of salaries and compensations of all school teachers employed by the Board of Education of the City of Camden, New Jersey, deducted during the fiscal year 1934-1935, as established by resolution dated February 17th, 1934, be, and the same is hereby restored as of July 1st, 1937, so that the reductions for the school year of 1937-1938 shall be two-thirds of what they were since the adoption of the resolution of February 17th, 1934."

The second was adopted on December 27th, 1937, and the pertinent part thereof reads as follows:

"That one-half of the amount of salary and compensation of all school teachers employed by the Board of Education of the City of Camden, New Jersey, deducted during the fiscal year 1937-1938 as established by resolution dated February 23d, 1937, be and the same is hereby restored as of July 1st, 1938, so that the reductions for the school year of 1938-1939 shall be one-half of what they were during the school year of 1937-1938."

If these resolutions are valid the basic salaries of the school

teachers would be reduced ten per cent. for the school year 1937-1938 and five per cent. for the school year 1938-1939.

Following the passage of the first stated resolution and before any payments were made thereunder, each of the two hundred and twenty-one teachers employed by prosecutor filed a written protest with it challenging its right so to reduce his or her salary; each made clear that any amount taken less than the full amount due was taken merely on account, and was not to be construed as a waiver of, or operate prejudicial to, the right of each teacher to his or her full contractual salary. That protest was of no avail.

Thereupon each of the two hundred and twenty-one teachers, hereinafter referred to as respondent, filed a petition with the Commissioner of Education of our state praying that the resolutions adopted by prosecutor, as aforesaid, on February 23d, 1937, and December 27th, 1937, be declared invalid, and further praying that prosecutor be directed to pay the basic salary of each teacher for the school years stated in said resolutions.

These prayers were predicated upon the premise that since each teacher had been employed for at least "three consecutive calendar years" in Camden and was, therefore, entitled to tenure (*R. S.* 18:13-16); and that since each teacher was "the holder of a proper teacher's certificate in full force and effect (*R. S.* 18:13-19), it followed that prosecutor could not effect reductions in their salaries, in the absence of an enabling act, unless it be effected for a cause or causes and in the manner prescribed by the act of 1909, *supra,* as amended, now *R. S.* 18:13-17.

Since all petitions involved the same issues they were, by consent, consolidated with the typical case of Malcolm M. Steck.

Steck's petition, in addition to all that has been written, discloses that he has been employed by prosecutor since 1923 and that his basic salary is $2,800 a year. The result of the challenged resolutions, as to him, is that, by the resolution of February 23d, 1937, his salary for July 1st, 1937, to July 1st, 1938, was reduced from $2,800 to $2,520, and by the resolution of December 27th, 1937, his salary for July 1st,

1938, to July 1st, 1939, was reduced from $2,800 to $2,660. Again by consent, it was agreed that only Steck's petition be answered.

Prosecutor's answer thereto, in substance, is that the challenged resolutions increase rather than reduce respondent's salary from that which was fixed by resolution of March 27th, 1933, adopted in pursuance of the first enabling act of 1933, *supra;* that even if the challenged resolutions, in fact, reduced respondent's salary, prosecutor, because of stressed financial condition of the city of Camden, had the power to adopt the resolutions reducing salaries of its teachers as necessary measures of economy; and that the attack upon the resolution of December 27th, 1937, was premature because respondent's petition was filed May 26th, 1938, and the resolution did not become operative until July 1st, 1938.

The Commissioner of Education determined, on August 8th, 1938, that prosecutor was without authority to reduce the salaries of its teachers after July 1st, 1937; that any resolution passed by prosecutor purporting to effect such reductions was invalid; and therefore, directed that prosecutor pay to "petitioners the difference between that which they received for the year 1937-1938 and that which they would have received if they had been paid the amounts which they alleged to be their full contractual salaries."

On appeal to the State Board of Education the latter affirmed the Commissioner of Education on November 19th, 1938.

A justice of this court allowed a writ of *certiorari.* On application, by consent, he also granted leave to the State Board of Education to abridge the return and state of case to the extent of omitting therefrom all the petitions save that of Malcolm M. Steck.

The points and arguments made below are re-stated and re-argued here. We think they are without merit.

*First:* The status of a school teacher entitled to tenure as affected by the enabling laws of 1933, 1935 and 1936, *supra,* is settled. In construing the act of 1933, *supra* (the acts of 1935 and 1936 are identical on point) that status was in the words of Mr. Justice Parker, speaking for this court, said

to be "while in one sense, perhaps contractual is in essence dependent upon a statute, like that of the incumbent of a statutory office, which the legislature may at will abolish, or whose emoluments it may change." *Phelps* v. *Board of Education of the Town of West New York, New Jersey,* 115 *N. J. L.* 310; 180 *Atl. Rep.* 220; *affirmed,* 116 *N. J. L.* 412; 185 *Atl. Rep.* 8; 300 *U. S.* 319; 81 *L. Ed.* 674. It was in pursuance of the permissive right granted by the aforesaid enabling acts that prosecutor was empowered to reduce, by resolutions, salaries of its teachers between July 1st, 1933, and July 1st, 1937. But when, as here, that permissive right lastly expired on July 1st, 1937, prosecutor could not thereafter bring it to life and invoke it in support or justification of its exercise. It simply was non-existent.

The argument that the resolution passed on February 23d, 1937, is valid because it was passed prior to July 1st, 1937, is clearly without merit. For, it is the effective date of operation (school year July 1st, 1937, to July 1st, 1938) and not the date of its passage that is controlling. Nor does the argument that the challenged resolutions in fact increased respondent's salary carry persuasion. Both the language of the enabling acts and the challenged resolutions negative the argument. The obvious purpose of the enabling acts was to empower boards of education to reduce salaries of its teachers for certain periods and to that extent help to ease the stringent financial condition of municipalities. The whole tenor of these acts sounds in reductions. They even go so far as to place a minimum of salary from which no reductions are permissible. But with this power to reduce salaries of teachers, we perceive in these enabling acts a definite policy, or intent, on the part of the legislature not otherwise to trench upon the status of teachers. For example, each teacher who is a member of a pension fund is permitted to continue to pay into that fund upon his or her salary as unchanged with like resultant benefits from each payments to each teacher and his beneficiary.

And so, too, both resolutions speak of the amount of salary "reductions" or "deductions" as of a certain school year to be "restored" as of the time therein stated. The words are plain and simple. When reductions or deductions are made

from one's salary it can mean but one thing—a lesser salary. And when one agrees to restore that which has been reduced or deducted that simply means that he will give back or return that which he reduced or deducted. The end result of the resolutions, as already stated, is that respondent in fact receives less than his basic salary.

What was respondent's contractual salary? The law governing the employment of teachers and teachers' contracts is regulated by statute. *R. S.* 18:13-5, *et seq.* No copy of a contract between prosecutor and respondent is made to appear. But prosecutor in its answer to respondent's petition admits that respondent "has been in the employ of [prosecutor] since the time alleged in the petition and *at the basic salary therein stated,*" which, as we have seen, was $2,800 a year. The words "basic salary" are thus treated, without objection, as synonymous with "contractual salary." Unlike the factual situation in the recent case of *Cole* v. *Board of Education of Trenton,* 122 *N. J. L.* 585; 5 *Atl. Rep.* (*2d*) 467, there is no question here either as to respondent's contractual salary or as to his tenure.

The contention that the attack upon the resolution of December 27th, 1937, was premature is without merit. It necessarily falls with the invalid resolution of February 23d, 1937.

*Second:* Prosecutor argues, even if it be held that the challenged resolutions of February and December of 1937 reduced respondent's salary, that it had the power so to do. That argument is predicated upon the premise that the reduction of teachers' salaries and the reduction of salaries of city officials and officers, &c., were necessary because of the stringent financial condition of the city of Camden. In support of this argument statistical data are produced for the period between 1931 and 1938. Generally stated, these data are to the effect that the ratables upon which taxes are levied, have decreased annually; that the tax rate increased; that the ratables from 1934 to 1938 are about the same and that the tax rate for that period is the same; that the percentage of taxes collected has gradually increased; that the city made substantial contributions for emergency relief and the admin-

istration thereof for the years of 1937 and 1938; and that the city reduced the salaries of its officials, officers, &c., on the same percentage as that of the school teachers. These data further show that the city unexpectedly received in 1937 the sum of $405,419.75 in franchise and gross receipt taxes; and without specification, that there has been a number of increases in positions in 1937 and 1938 as compared with prior years, and there has also been a number of increases in salaries of a number of employes in the city and of employes of prosecutor, and that these increases in salaries vary and differ in amounts as between individuals in the same class of service compared with preceding years.

It appears to us that all this is beside the point. The question here is not whether prosecutor acted in good faith or bad faith. Conceding, in our view of the case, that prosecutor acted in good faith, the question still remains whether prosecutor's action in reducing respondent's salary, in the manner stated, can be supported or justified under the law. We do not think so.

When the aforesaid enabling acts expired the situation beginning with July 1st, 1937, was as if they never had existed. We turn, therefore, to find out what was the then existing law governing the reduction of teachers' salaries? The answer is clear; it is the law of 1909, *supra*, as amended and supplemented, and now *R. S.* 18:13-17.

The language of *R. S.* 18:13-17 is unambiguous; it is clear; it means just what it says. The salary of a school teacher can only be reduced after proved charge of "inefficiency, incapacity, conduct unbecoming a teacher or other just cause." Under such circumstances there is no reason in law for judicial construction. *Douglass* v. *Chosen Freeholders of Essex County*, 38 *N. J. L.* 214; *Public Service Co-ordinated Transport* v. *State Board of Tax Appeals*, 115 *Id.* 97 (and cases collated on *p.* 103); 178 *Atl. Rep.* 550.

The challenged resolutions of February 23d, 1937, and December 27th, 1937, are contrary to the provisions of the laws of 1909, *supra*, as amended and supplemented, now *R. S.* 18:13-17, and are, therefore, invalid. The action of the lower tribunals is affirmed.

The writ is dismissed, with costs.