**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM ROBERTSON; CYNTHIA
CARLISLE; RUSSELL HATHHORN;
CHRISTOPHER MYERS; MICHAEL
SIMPSON; JANET BOWLER; LARRY
DEAN; JEAN DEJARNATT,
          *Plaintiffs-Appellants,*

MARION COUNTY,
          *Intervenor-Appellee,*

          v.

THEODORE KULONGOSKI; DAWN
MORGAN, Official capacity; JANICE
DERINGER, Official capacity; MARK
GARDNER, Official capacity; JEANNE
GARST, Official capacity; GLENN
HARRISON, Official capacity; TODD
SCHWARTZ, Official capacity;
GEORGE RUSSELL, Official capacity;
PUBLIC EMPLOYEES RETIREMENT
BOARD,
          *Defendants-Appellees.*

No. 04-35898

D.C. No.
CV-03-00999
MWM

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted
September 15, 2006—Portland, Oregon

Filed October 24, 2006

17713

Before: Barry G. Silverman and Ronald M. Gould, Circuit Judges, and John S. Rhoades,* District Judge.

Opinion by Judge Rhoades

---

*The Honorable John S. Rhoades, Sr., Senior United States District Judge for the Southern District of California, sitting by designation.

## COUNSEL

Gregory A. Hartman, Bennett, Hartman, Morris & Kaplan, Portland, Oregon, for the plaintiffs-appellants.

Jeremy D. Sacks, Stoel Rives, Portland, Oregon, for the defendants-appellees.

---

**OPINION**

RHOADES, District Judge:

Plaintiffs-Appellants ("the Employees"), current and retired employees of the State of Oregon, challenge legislation[1] passed by the Oregon legislature in 2003 that amended the Oregon Public Employees Retirement System ("PERS"). The Employees bring their claims under the Contract Clause of the United States Constitution. The Employees appeal the district court's denial of their motion for summary judgment and grant of summary judgment in favor of defendants-appellees (collectively "the State"). Only the Employees' First and Sixth Claims remain at issue.[2]

## I.  The Oregon Public Employees Retirement System

"Oregon has provided its public employees with a retirement plan, as a contractual benefit of public employment, since 1945." *Strunk v. Public Employees Retirement Board*, 108 P.3d 1058, 1068 (Or. 2005). Prior to the 2003 legislation, PERS members contributed six percent of their salaries to the

---

[1]*See* House Bill 2003 (2003), Oregon Laws 2003, chapter 67.

[2]As the Employees note in their Supplemental Opening Brief, their Second, Third, Fourth and Fifth Claims are moot in light of the Oregon Supreme Court's holding in *Strunk v. Public Employees Retirement Board*, 108 P.3d 1058 (Or. 2005). Moreover, the Employees have specifically withdrawn their appeal of the district court's decision regarding their Third, Seventh, Eighth, Ninth and Tenth Claims. Although the Employees contend that this appeal is now "limited to the diversion of employee contributions from employee regular accounts" — which could be construed as a representation that only the First Claim remains at issue — because the Employees' Sixth Claim is not moot and the Employees do not specifically withdraw their appeal as to that claim, we consider it here.

PERS fund, *see* O.R.S. 238.200(1)(a) (2001), and the contributions to the fund were then directed to either a "regular" account or a "variable" account. *See* O.R.S. 238.200(2) (2001); O.R.S. 238.260(3) (2001); *Strunk*, 108 P.3d at 1079-80, 1095-96. Earnings on contributions to the regular accounts were credited to those accounts. *See Strunk*, 108 P.3d at 1071. Since 1975, the PERS statutory scheme has "provided that the earnings to be credited annually to Tier One members' regular accounts will be no less than the existing assumed earnings rate."[3] *Id.* at 1087; *see also* O.R.S. 238.255 (1995).

As for the calculation of the members' benefits at retirement, the Oregon Supreme Court has explained:

> There are three formulas available for calculating a PERS member's service retirement allowance, commonly known as the Pension Plus Annuity, the Full Formula, and the Money Match. The Pension Plus Annuity, which is available to only members who contributed to PERS before August 21, 1981, consists of the sum of an annuity component and a pension component. The annuity component is composed of the actuarial equivalent of the member's account balances at retirement. The pension component, funded by the employer, is equal to one percent of the member's final average salary (1.35 percent for legislators and police and fire employees) for each service year.
>
> The Full Formula also includes an annuity component composed of the actuarial equivalent of the member's account balances at retirement and a pension component; however, the pension component is

---

[3]PERS classifies Oregon employees into two "tiers." "Tier One" members are those whose membership in PERS began before January 1, 1996. *See Strunk*, 108 P.3d at 1069. All plaintiffs in this action are Tier One members or retired Tier One members.

> calculated differently than under the Pension Plus Annuity. The Full Formula first calculates a member's service retirement allowance by multiplying the member's final average salary by a factor set at 1.67 percent (two percent for legislators, police officers, and firefighters) and then multiplying the resulting figure by the member's years of membership. That service retirement allowance then is funded using the actuarial equivalent of the member's account balances at retirement (the annuity component) and employer contributions required to make up the difference (the pension component).
>
> Under the Money Match, a member's service retirement allowance is calculated by determining the sum of the actuarial equivalent of the member's account balances at retirement (the annuity component) and then adding a sum in an equal amount that is charged to the employer, i.e., the "match" (the pension component). The resulting service retirement allowance therefore amounts to twice the actuarial equivalent of the member's account balances at retirement.

*Strunk*, 108 P.3d at 1069-70. Upon retiring, "a PERS member receives a service retirement allowance based on the formula that produces the highest pension amount among the foregoing three alternative formulas." *Id.* at 1070; *see also* O.R.S. 238.300 (2001). Prior to 2003, a retired member's service retirement allowance was increased annually through a cost-of-living adjustment ("COLA") regardless of the formula used to determine the allowance. *Strunk*, 108 P.3d at 1070.

Under the challenged 2003 legislation, Tier One members no longer have the option of contributing to the regular or variable accounts. Rather, all member contributions made after January 1, 2004, are now placed in a new Individual Account Program ("IAP") account. *See id.* at 1071-72. Importantly, unlike the balances in the regular accounts, "[t]he bal-

ances held in members' IAP accounts will not be annually credited at not less than the assumed earnings rate and, at retirement, will not be subject to employer matching under the Money Match or be enhanced by annual COLAs." *Id.* at 1072.

The statutory provisions regarding how benefits are calculated under the Pension Plus Annuity, the Full Formula and the Money Match were not altered by the 2003 legislation. However, the effect of the 2003 legislation is that Money Match will not be the predominant formula for calculating PERS retirement allowances, which it has been in recent years. *Id.* at 1070 n.18. The Money Match in recent years has provided generous retirement allowances. For example, in 2000, "the average PERS retired member with 30 years of creditable service retired at the age of 53 with a service retirement allowance equal to 106 percent of the member's final average salary." *Id.* at 1070.

## II. Analysis

In broad terms, the Employees contend that they have a contractual right to participate in the PERS pension plan as it existed prior to the challenged 2003 legislation and that the 2003 legislation violates the federal Contract Clause by impairing the State's obligations to them under the pre-2003 PERS statutory scheme. Specifically, the Employees' First Claim challenges the fact that the 2003 legislation eliminates the Employees' right to contribute six percent of their salaries to a regular account, *see* O.R.S. 238.200(4), redirects the Employees' contributions to an IAP account, *see* O.R.S. 238A.305(1) (2003); O.R.S. 238A.330 (2003), and effectively eliminates the Money Match as the primary formula for calculating member service retirement allowances. The Employees' Sixth Claim challenges the fact that the 2003 legislation eliminates their right to contribute to a variable account.

[1] The federal Contract Clause provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."

United States Const. art. I, § 10, cl. 1. To determine whether a legislative enactment violates the Contract Clause, the panel must engage in a three-part analysis. *Rui One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004). The first part of the analysis, which is at issue here, is " 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.' " *Id.* (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). In making this determination, the court must consider "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial.' " *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). Importantly, "[t]he first sub-inquiry is not whether any contractual relationship whatsoever exists between the parties, but whether there was a 'contractual agreement *regarding the specific . . . terms allegedly at issue.*' " *Rui One Corp.*, 371 F.3d at 1147 (quoting *Romein*, 503 U.S. at 187) (emphasis added); *see also State of Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 100 (1938).

**[2]** In determining the contours of the statutorily-created PERS contract, we apply federal law, *see State of Nev. Employees Ass'n, Inc. v. Keating*, 903 F.2d 1223, 1227 (9th Cir. 1990); *Brand*, 303 U.S. at 100, which requires us to find a "clear indication" of the Oregon legislature's intent that the State be contractually bound by the provisions of PERS that the Employees urge us to find are contractual promises. *National R.R. Passenger Corp. v. Atchison Topeka and Santa Fe Ry. Co.*, 470 U.S. 451, 465-466 (1985) (emphasis added). As explained in *National Railroad Passenger Corp.*:

> For many decades, this Court has maintained that *absent some clear indication that the legislature intends to bind itself contractually, the presumption is that* "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Dodge v. Board of Education*, 302 U.S. 74,

79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937). *See also Rector of Christ Church v. County of Philadelphia*, 24 How. 300, 302, 16 L.Ed. 602 (1861) ("Such an interpretation is not to be favored"). This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. *Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 104-105, 58 S.Ct. 443, 447-448, 82 L.Ed. 685 (1938). Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body . . . . Thus, the party asserting the creation of a contract must overcome this well-founded presumption, *Dodge, supra*, 302 U.S., at 79, 58 S.Ct., at 100*, and we proceed cautiously* both in identifying a contract within the language of a regulatory statute and *in defining the contours of any contractual obligation.*

*Id.* at 465-466. (emphasis added).[4]

**[3]** Finally, although we apply federal law in ascertaining the State legislature's intent to bind the state contractually, we must accord "respectful consideration and great weight to the views of the State's highest court . . . ." *Romein*, 503 U.S. at 187 (quoting *Brand*, 303 U.S. at 100); *see also Phelps v. Bd. of Educ. of Town of West New York*, 300 U.S. 319, 322

---

[4]The Employees attempt to draw a distinction between the standard for ascertaining the legislature's intent to be bound by a contract in general and the standard for ascertaining its intent regarding the terms of the contract. The Employees contend that once it is determined that the legislature intended to create an enforceable contract we need not apply a heightened standard in determining the terms of that contract. However, we have not been cited any authority that so holds, and this contention cannot be reconciled with the passage we cite from *National Railroad Passenger Corp.*

(1937); *Dodge v. Bd. of Educ. of City of Chicago*, 302 U.S. 74, 79 (1937).

**[4]** Clearly, under Oregon law, "PERS is a contract between the state and its employees." *Oregon State Police Officers' Ass'n v. State*, 918 P.2d 765, 779 (Or. 1996). However, whether the parties had a contract is not at issue here. Rather, like the Oregon Supreme Court in *Strunk*,[5] we are called upon to determine the *contours* of the Employees' PERS contract. Having considered *Strunk*'s detailed analysis of this issue, which includes a thorough examination of the text and context of all relevant statutory provisions along with an examination of the history of PERS,[6] we agree with the Oregon Supreme Court that the Oregon legislature did not promise the Employees a perpetual or "immutable" right to contribute to the regular and variable accounts. *Strunk*, 108 P.3d at 1087. Moreover, the Employees' arguments to the contrary notwithstanding, we also agree with *Strunk* that the legislature "did not promise that PERS would be maintained so that the Money Match remains the primary calculator of member service retirement allowances . . . ." *Id.* at 1085; *see also id.* at 1087. We further agree that the Oregon legislature's promise to the Employees was simply that they "would receive service retirement allowances calculated under whichever formula yields the highest pension amount for that mem-

---

[5]In *Strunk*, PERS members who are not parties to the present lawsuit brought federal and state Contract Clause challenges to the identical 2003 legislative provisions that are at issue here.

[6]Rather than reiterate the *Strunk* court's analysis, we direct the reader to *Strunk*, 108 P.3d at 1080-87, 1095-98. We do note, however, that, the Employees' contention to the contrary notwithstanding, the *Strunk* court did, as it should, consider the provision regarding contributions to the regular accounts in the context of the PERS contract as a whole. *See id.* at 1087 (explaining that "the text of O.R.S. 238.200(1)(a) (2001) *and its statutory context* do not establish clearly and unambiguously that the legislature intended to promise members that they could contribute six percent of their salaries to their regular accounts throughout their PERS membership") (emphasis added).

ber . . . ." *Id.* at 1085. Finally, we conclude, as did *Strunk*, that "[t]he legislature did not alter or eliminate that promise when it enacted the 2003 PERS legislation." *Id.* at 1087.

In reaching this conclusion, we reject the Employees' contention that *Strunk*'s analysis is not helpful here because it applied an incorrect standard in determining the legislature's intent. The standard it used — whether there was clear and unambiguous evidence of the legislature's intent — is consistent with the applicable standard under federal law. *See National R.R. Passenger Corp.*, 470 U.S. at 465-66. We also reject the Employees' argument that *United States v. Winstar*, 518 U.S. 839 (1996), provides the standard for determining the contours of a statutorily-created contract because, unlike *National Railroad Passenger Corp.*, *Winstar* did not involve the interpretation of such a contract.

The Employees' contention that *Keating*, not *Strunk*, should be the starting point for our analysis is also unavailing.[7] Not only does this argument overlook the fact that federal courts accord deference to a state court's determination as to the existence *and terms* of a contract created by state statute, *see Brand*, 303 U.S. at 100; *Phelps*, 300 U.S. at 322, but *Keating* does not provide a framework for determining the terms of a statutorily-created contract.

In *Keating*, employees of the State of Nevada and their employee association challenged the Nevada legislature's termination of their right to withdraw their pension contributions

---

[7]Interestingly, although the Employees now contend that federal law drives the analysis regarding the scope of their statutorily-created contract, prior to *Strunk* the Employees relied heavily on Oregon cases such as *Taylor v. Multnomah County Deputy Sheriff's Retirement Board*, 510 P.2d 339 (Or. 1973), *Hughes v. State of Oregon*, 838 P.2d 1018 (Or. 1992), and *Oregon State Police Officers' Ass'n v. State*, 918 P.2d 765 (Or. 1996) in support of their claims. We conclude that nothing in these cases suggests a flaw in *Strunk*'s analysis of the specific PERS terms at issue here, which we find to be the correct analysis.

without penalty. The State of Nevada did not dispute that a contractual relationship existed between the parties, *see* 903 F.2d at 1226, and notably absent in *Keating* is an analysis as to whether there was a contractual agreement regarding the specific term at issue in that case. Because the seminal issue here is not whether the parties had an agreement but, rather, the terms of that agreement, and because *Keating* is silent as to how this issue should be approached, the Employees' reliance on *Keating* is unavailing here.

Finally, we note that the Employees' remaining arguments are unavailing because they are predicated upon the presumption that the perpetual right to contribute to the regular and variable accounts and the right to have their member service retirement allowances calculated under the Money Match are statutorily-created PERS contractual rights. Because we have found they are not, it is irrelevant whether the Oregon legislature could have unilaterally abrogated such contractual rights were they to exist.

## III.  Conclusion

**[5]** Having considered the Oregon Supreme Court's detailed analysis of the terms of the Employees' statutorily-created PERS contract, we conclude, as did the Oregon Supreme Court in *Strunk*, that the Employees' PERS contract does not contain the promises urged by the Employees. Accordingly, the 2003 legislation does not impair a term of the Employees' PERS contract and, therefore, does not violate the federal Contract Clause. Accordingly, the district court is AFFIRMED.