DILLON, Judge, concurring in part and dissenting in part.
This case involves an issue important to the educational system of our State. However, as our Supreme Court has stated, "[a]s to whether an act is good or bad law, wise or unwise, is a question for the Legislature and not for the courts-it is a political question. The mere expediency of legislation is a matter for the Legislature, when it is acting entirely within constitutional limitations, but whether it is so acting is a matter for the courts." State v. Warren, 252 N.C. 690, 696, 114 S.E.2d 660, 666 (1960).
The majority holds that the Career Status Repeal is constitutional as applied to probationary teachers. I concur fully with this holding and, therefore, do not address any issues raised in that portion of the majority opinion.
The majority also holds that the Career Status Repeal is unconstitutional in toto as applied to teachers who have attained career status under the Career Status Law ("career teachers"). I concur in part and dissent in part with this holding for the reasons stated in this opinion.
*25 I. Summary of Opinion
I disagree with the majority's conclusions that the Career Status Law created a constitutionally protected contractual right to continued employment (i.e., tenure) for career teachers and that the Career Status Repeal impermissibly impairs that contract right, in violation of the Contract Clause of the United States Constitution.
Notwithstanding, based on our Supreme Court's decision in Crump v. Bd. of Educ., 326 N.C. 603, 392 S.E.2d 579 (1990), career teachers do have a constitutionally protected property interest in continued employment under the Career Status Law. Id. at 614, 392 S.E.2d at 584. Therefore, I conclude that N.C. Gen.Stat. § 115C-325.3(e) of the Career Status Repeal is un constitutional to the extent that it allows a local school board to deprive a career teacher of this property interest without a hearing. However, I do not believe that the Career Status Law is, otherwise, unconstitutional on its face.
II. Analysis
It has long been recognized in this State that courts have the power to declare an act of the General Assembly unconstitutional. See Dickson v. Rucho, 367 N.C. 542, 549, 766 S.E.2d 238, 244 (2014), vacated and *320 remanded on other grounds, - -- U.S. ----, 135 S.Ct. 1843, 191 L.Ed.2d 719 (2015) ; Bayard v. Singleton, 1 N.C. (Mart.) 5 (1787). However, it has also long been recognized "that great deference will be paid [by courts] to the acts of the legislature," see State ex rel. Martin v. Preston, 325 N.C. 438, 448, 385 S.E.2d 473, 478 (1989), and that "where a statute may be construed [in a way] ... which would make it constitutional, [our courts] will give it that construction rather than a contrary one [.]" Commissioners v. Ballard, 69 N.C. 18 (1873).
In this opinion, I address my conclusions that (A) the Career Status Law does not create a constitutionally protected contract right to continued employment (i.e., tenure); (B) the Career Status Repeal is unconstitutional to the extent that it grants local school boards the authority to strip career teachers of their constitutionally protected property interest without first holding a hearing; and (C) the Career Status Repeal, on its face, is not otherwise unconstitutional.
A. The Career Status Law Did Not Create Contract Rights
The United States Supreme Court has stated: "[t]he presumption is that ... [a statute enacted by a legislature] is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise," see Dodge v. Bd. of Educ., 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937), and further that generally "an act fixing the term or tenure of ... an employe[e] of a state agency" is the type which "may be altered at the will of the Legislature." Id. at 78-79, 58 S.Ct. at 100. This "well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state." Nat'l R.R. Passenger Corp. v. Atchison, Topeka and Santa Fe Ry. Co., 470 U.S. 451, 466, 105 S.Ct. 1441, 1451, 84 L.Ed.2d 432 (1985). "Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of the legislative body." Id.
In the same year that Dodge was decided, the Supreme Court followed this presumption by concluding that a New Jersey statute establishing tenure rights for teachers who had completed a number of years of service[1] did not create a contract right and, therefore, was not subject *321 to the protections of the Contract Clause. Phelps v. Bd. of Educ., 300 U.S. 319, 323, 57 S.Ct. 483, 485, 81 L.Ed. 674 (1937). Accordingly, the Court held that this New Jersey tenure statute could be changed by a subsequent legislature:
Although the [A]ct of 1909 prohibited [a local school board] ... from reducing [a] teacher's salary or discharging him without cause, we agree with the courts below that *26 this was but a regulation of the conduct of the [local school] board and not a term of a continuing contract of indefinite duration with the individual teacher.
Id. (emphasis added). The Court found no error in the lower court's conclusion that the New Jersey statute "established a legislative status for teachers" rather than "a contractual one that the Legislature may not modify [.]" Id. at 322, 57 S.Ct. at 484 (emphasis added).
I find the Phelps decision by the United States Supreme Court extremely persuasive, if not controlling, in deciding the Contract Clause issue in the present case.[2] Like the statute at issue in Phelps, language in the Career Status Law is simply not presented in clear and unequivocal language to overcome the strong presumption against finding contract rights. For example, there is no language in the Law which states that contracts with career teachers must contain a provision which grants those teachers the right to continued employment. In fact, the word "contract" almost never appears in the Law-and never in N.C. Gen.Stat. § 115C-325(c1), the section in the Law which established tenure. Rather, the language in the Law is clearly couched in terms of establishing a "legislative status for teachers," see Phelps, 300 U.S. at 322, 57 S.Ct. at 484, prominently employing the phrase "career status" all throughout as a label for teachers retained after four years of service.
I am also persuaded by the decisions from the highest courts of the other states which have seemingly universally concluded that statutes establishing tenure for public employees do not create constitutionally protected contract rights. See, e.g., Proksa v. Arizona State Sch. for the Deaf and Blind, 205 Ariz. 627, 74 P.3d 939, 943-44 (2003) (Arizona Supreme Court); Fumarolo v. Chicago Bd. of Educ., 142 Ill.2d 54, 153 Ill.Dec. 177, 566 N.E.2d 1283, 1306 (1990) (Illinois Supreme Court); Pineman v. Oechslin, 195 Conn. 405, 488 A.2d 803, 808-10 (1985) (Connecticut Supreme Court); Washington Fed. of State Emps., *322 AFL-CIO v. State, 101 Wash.2d 536, 682 P.2d 869, 872 (1984) (Washington Supreme Court); Crawford v. Sadler, 160 Fla. 182, 34 So.2d 38, 39 (1948) (Florida Supreme Court); Morrison v. Bd. of Educ. of City of West Allis, 237 Wis. 483, 297 N.W. 383, 386 (1941) (Wisconsin Supreme Court); State ex rel. Munsch v. Bd. of Comm'rs of Port of New Orleans, 198 La. 283, 3 So.2d 622, 624-25 (1941) (Louisiana Supreme Court); Lapolla v. Bd. of Educ. of City of New York, 282 N.Y. 674, 26 N.E.2d 807 (1940) (New York Court of Appeals, that state's highest court); Malone v. Hayden, 329 Pa. 213, 197 A. 344, 352-53 (1938) (Pennsylvania Supreme Court).
The majority and the trial court below rely on what seems to be one of the only-if not the only-reported cases in America where the repeal of a tenure statute was declared unconstitutional based on the Contract Clause, the case of Indiana ex rel. Anderson v. Brand, 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1938), decided by the United States Supreme Court during the same term it decided Dodge and the year after it decided Phelps. Id. at 107-08, 58 S.Ct. at 449. However, I believe Brand is clearly distinguishable.
In Brand, the Court determined that an Indiana tenure statute for teachers did create a contract right to continued employment, subject to the protections of the Contract Clause. Id. at 105, 58 S.Ct. at 448. After recognizing the presumption that statutes do not create contracts, the Court concluded that the particular language of the Indiana statute did evince an intention to create contract rights. Id. at 104-05, 58 S.Ct. at 448. The Court homed in on the fact that the Indiana statute-unlike the Career Status Law-was "couched in terms of contract," pointing out that the word "contract" appears more than 25 times therein. Id. at 105, 58 S.Ct. at 448. The Court quoted much of the Indiana statute, which described the contract itself, including that the contract *27 "shall be deemed to continue in effect for an indefinite period and shall be known as an indefinite contract." Id. Also, the Court found persuasive that the Indiana Supreme Court had held on a number of occasions that the Indiana statute created contract rights. Id. at 100, 58 S.Ct. at 446 (stating that "respectful consideration and great weight [should be given] to the views of the state's highest court").[3]
Brand is still "good law" in that a state could employ statutory language which "unequivocally and clearly" demonstrates an intent *323 to create contract rights rather than merely providing for a status. However, the result reached in Brand is somewhat of an outlier, due to the language employed in the Indiana statute at issue. An American Law Reports annotation on this issue cites Brand , along with Phelps , Dodge , and many of the state cases cited above and describes the holding in Brand as an anomaly:
It is quite generally conceded that a teachers' tenure statute may be so worded as to disclose a legislative intention to confer upon the teachers coming within the provisions of the act contractual rights which may not be taken away from them by subsequent legislation.... (See, for example, [Brand ], which is cited and distinguished on this ground in most of the cases cited in this annotation. )
On the other hand it is almost unanimously recognized that in the absence of any language in the act evincing an intention to confer upon the teacher a contractual right, the mere recognition by such acts of the status of permanency of tenure does not create in the teachers ... vested contractual rights immune from legislative encroachment by subsequent repealing or modifying statutes, but merely declares a legislative policy, to continue so long as the legislature may ordain, for the protection of such teachers[.]
147 A.L.R. 293 (1943) (emphasis added). In fact, the article does not cite to a single case reaching the same result as was reached in Brand. See id.
Based on my conclusion that the language of the Career Status Law is clearly more analogous to the statute at issue in Phelps than the statute at issue in Brand; and on the presumption against finding contractual rights in statutes; and on the overwhelming weight of authority from across the country, I do not believe that the General Assembly was prohibited by the Contract Clause to modify or repeal the laws enacted concerning career status of teachers established by that body in 1971.[4]
*324 In addition to relying on Brand, the majority and the trial court rely on decisions from our Supreme Court which held that statutes allowing public employees to earn deferred compensation benefits in various forms (e.g., pension and benefits) created contract rights and were, therefore, protected by the Contract Clause, citing Faulkenbury v. Teachers' and State Emps.' Ret. Sys. of North Carolina, 345 N.C. 683, 483 S.E.2d 422 (1997), Bailey v. State, 348 N.C. 130, 500 S.E.2d 54 (1998), and Wiggs v. Edgecombe Cnty., 361 N.C. 318, 643 S.E.2d 904 (2007). However, those cases are clearly distinguishable. In my view, a statutory right to deferred compensation which has vested based on work performed is fundamentally different from statutory tenure status (the right to continue to work in the future and earn additional compensation for that future work). See Bailey, 348 N.C. at 141, 500 S.E.2d at 60 (stating that pension benefits *28 are "a deferred portion of the compensation earned for services rendered"). In Faulkenbury, for example, the Supreme Court held that disability benefits provided by a statute were benefits that were promised in exchange for five years of service. 345 N.C. at 691, 483 S.E.2d at 427. Under the Career Status Law, however, teachers did not "earn" a benefit of continued employment by completing four years of service. They only became eligible to be elected to "career status" at the end of four years.
I find persuasive that other states have treated statutes defining deferred compensation differently from statutes defining tenure rights in the context of the Contract Clause. See, e.g., Washington Fed. of State Emps., 682 P.2d at 872 (Washington Supreme Court-distinguishing between pension statutes, which do create contract rights and tenure statutes, which do not); Kern v. City of Long Beach, 29 Cal.2d 848, 179 P.2d 799, 801-03 (1947) (California Supreme Court-same).
In conclusion, in my view the presumption-that the Career Status Law was "not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise"-has not been overcome. Dodge, 302 U.S. at 79, 58 S.Ct. at 100. In fact, the language of the Career Status Law compels a conclusion that a status was created for career teachers rather than a contract right. As such, I believe the General Assembly is not restricted by the Contract Clause from modifying the Law as it has done so on several occasions since its passage in 1971.[5]
*325 B. Property Interest-The Right to a Hearing
Our Supreme Court has held that a career teacher has a property interest in continued employment. Crump, 326 N.C. at 613-14, 392 S.E.2d at 584. See also Peace v. Emp't Sec. Comm'n of North Carolina, 349 N.C. 315, 321-22, 507 S.E.2d 272, 281-82 (1998) (citing Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972) ). Therefore, I conclude that N.C. Gen.Stat. § 115C-325.3(e) (2013)-which is part of the Career Status Repeal-is unconstitutional in that it does not provide a career teacher the right to a hearing before a local school board may act on a decision not to retain the teacher, but rather grants a local school board the discretion whether to conduct a hearing.
Regarding the timing of the hearing, there are situations where the United States Supreme Court has held that a hearing can be held after the deprivation of certain property rights has occurred. See, e.g., Dixon v. Love, 431 U.S. 105, 113-15, 97 S.Ct. 1723, 1727-29, 52 L.Ed.2d 172 (1977) (truck drivers' license). However, that Court has held that where a public employee's job is at stake, the hearing must come before the employee is deprived of his right to continued employment. Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 542-44, 105 S.Ct. 1487, 1493-94, 84 L.Ed.2d 494 (1985). Therefore, a career teacher is entitled to a hearing before a local school board acts not to renew that teacher's contract. See id.
C. The Career Status Repeal is Otherwise Constitutional
Except for its failure to provide a career teacher a hearing, as described above, I believe the Career Status Repeal is constitutional.
Under the Career Status Repeal, career teachers will no longer have contracts with *29 an unspecified duration, but rather their contracts will be subject to renewal at the end of a 1, 2 or 4 year term, as approved by their respective local school boards. N.C. Gen.Stat. § 115C-325.3(a) (2013). At the end of any contract term, a local school board has some discretion not to renew a teacher's contract. However, prior to the Repeal, the *326 local school board already had a measure of discretion to terminate a career teacher. Any increase in this discretion as a result of the enactment of the Repeal appears slight. Specifically, under the Repeal, local school boards do not have the discretion to dismiss a career teacher (by choosing not to renew the contract) for any reason which would be considered "arbitrary, capricious, discriminatory, for personal or political reasons, or on any basis prohibited by State or federal law." N.C. Gen.Stat. § 115C-325.3(e) (2013). As such, I do not believe the Repeal is unconstitutional on its face. Of course, legitimate "as applied" challenges to the Law may be raised in the future. However, that is not the case before us today.
III. Conclusion
My vote would be to uphold the Career Status Repeal except for that portion of N.C. Gen.Stat. § 115C-325.3(a) that provides a local school board the discretion whether to hold a hearing before depriving a career teacher of his or her property interest in continued employment. In my view, local school boards must provide pre-deprivation hearings for career teachers.

The New Jersey statute at issue was very similar to the Career Status Law, providing that any teacher completing three years of service would not be subject to a contract for a specific term but rather could only be dismissed for cause. See Phelps, 300 U.S. at 320-21, 57 S.Ct. at 484.

The majority is troubled by my reliance on Phelps and Dodge since these cases were not cited or argued by the State. However, the State does argue that the Repeal does not violate the Contract Clause, and I believe it is appropriate for this Court to rely on Supreme Court opinions and other legal authority which may be controlling or relevant in determining the law on a constitutional issue raised by a party.

Our high court has never held that the Career Status Law creates a contract right in continued employment subject to the Contract Clause of the United States Constitution, but rather that the Law creates a property interest subject to the Due Process Clause of the Fourteenth Amendment. See Crump, 326 N.C. at 613-14, 392 S.E.2d at 584.

Indeed, prior to enactment of the Career Status Repeal, the General Assembly had amended the Career Status Law on a number of occasions, some in ways to increase the discretion of local school boards, as has been done in the Repeal. For example, the General Assembly originally only provided 12 grounds for which a local school board could dismiss a career teacher. N.C. Gen. Stat. § 115-142(e)(1) (1971). Over the next several decades, however, the General Assembly expanded the local school board's power by adding three additional grounds-bringing the total to 15-most recently, in 1991. N.C. Gen.Stat. § 115C-325(e) (2013). Plaintiffs' counsel conceded during oral argument that all 15 grounds applied equally to all career teachers, even teachers who attained career status prior to 1991.

Assuming, arguendo, that the Career Status Law did create individual contract rights, I do not believe that the Career Status Repeal significantly impairs those rights. Our Supreme Court has held that the purpose of the Career Status Law was "to provide teachers of proven ability for the children of this State by protecting such teachers from dismissal for political, personal, arbitrary or discriminatory reasons." Taborn v. Hammonds, 324 N.C. 546, 556, 380 S.E.2d 513, 519 (1989). It could be argued that this purpose statement supports the conclusion that the Law was intended as a regulation of the local school boards to advance a policy of providing good teachers "for the children," rather than to create contract rights for the teachers. In any event, assuming that the Law created a contract right, the Repeal does not substantially impair this right. Specifically, under the Repeal, a career teacher is still not subject to dismissal except for reasons which are not "political, personal, arbitrary or discriminatory." See N.C. Gen.Stat. § 115C-325.3(e) (2013) (local school board is powerless in choosing not to retain a teacher for a reason which is "arbitrary, capricious, discriminatory, [or] for personal or political reasons").